## MOBIL OIL CORP. *v.* COMMISSIONER OF TAXES OF VERMONT

No. 78–1201.   Argued November 7, 1979—Decided March 19, 1980

426

BLACKMUN, J., delivered the opinion of the Court, in which BURGER, C. J., and BRENNAN, WHITE, POWELL, and REHNQUIST, JJ., joined. STEVENS, J., filed a dissenting opinion, *post*, p. 449. STEWART and MARSHALL, JJ., took no part in the consideration or decision of the case.

*Jerome R. Hellerstein* argued the cause for appellant. With him on the briefs were *John Dwight Evans, Jr.,* and *William B. Randolph.*

*Richard Johnston King* argued the cause for appellee. With him on the brief was *Gregory A. McKenzie,* Deputy Attorney General of Vermont.

*William D. Dexter* argued the cause for the Multistate Tax Commission et al. as *amici curiae* urging affirmance. With him on the brief were the Attorneys General and other officials for their respective States as follows: *J. D. McFarlane,* Attorney General of Colorado; *James Redden,* Attorney General of Oregon; *Jeff Bingaman,* Attorney General of New Mexico; *Carl R. Ajello,* Attorney General of Connecticut; *Albert R. Hausauer,* Special Assistant Attorney General of

North Dakota; *Robert B. Hanen,* Attorney General of Utah; *David H. Leroy,* Attorney General of Idaho, and *Theodore V. Spangler, Jr.,* Deputy Attorney General; *Paul L. Douglas,* Attorney General of Nebraska; *Edward G. Eiester, Jr.,* Attorney General of Pennsylvania; *Mike Greely,* Attorney General of Montana; *Warren R. Spannaus,* Attorney General of Minnesota; *Richard Gebelein,* Attorney General of Delaware; *Avrum M. Gross,* Attorney General of Alaska; and *William J. Baxley,* Attorney General of Alabama.*

MR. JUSTICE BLACKMUN delivered the opinion of the Court.

In this case we are called upon to consider constitutional limits on a nondomiciliary State's taxation of income received by a domestic corporation in the form of dividends from subsidiaries and affiliates doing business abroad. The State of Vermont imposed a tax, calculated by means of an apportionment formula, upon appellant's so-called "foreign source" dividend income for the taxable years 1970, 1971, and 1972. The Supreme Court of Vermont sustained that tax.

## I

### A

Appellant Mobil Oil Corporation is a corporation organized under the laws of the State of New York. It has its principal place of business and its "commercial domicile" in New York City. It is authorized to do business in Vermont.

---

*Thomas J. Houser* and *William E. Blasier* filed a brief for the National Association of Manufacturers as *amicus curiae* urging reversal.

Briefs of *amici curiae* urging affirmance were filed by *William J. Scott,* Attorney General of Illinois, *Carl R. Ajello,* Attorney General of Connecticut, *Francis X. Bellotti,* Attorney General of Massachusetts, and *Thomas D. Rath,* Attorney General of New Hampshire, for the State of Illinois et al.; and by *C. Douglas Floyd* for Standard Oil Company of California.

Briefs of *amici curiae* were filed by *George S. Koch* for the Committee on State Taxation of the Council of State Chambers of Commerce, and by *John H. Larson* and *James Dexter Clark* for the County of Los Angeles.

Mobil engages in an integrated petroleum business, ranging from exploration for petroleum reserves to production, refining, transportation, and distribution and sale of petroleum and petroleum products. It also engages in related chemical and mining enterprises. It does business in over 40 of our States and in the District of Columbia as well as in a number of foreign countries.

Much of appellant's business abroad is conducted through wholly and partly owned subsidiaries and affiliates. Many of these are corporations organized under the laws of foreign nations; a number, however, are domestically incorporated in States other than Vermont.[1] None of appellant's subsidiaries or affiliates conducts business in Vermont, and appellant's shareholdings in those corporations are controlled and managed elsewhere, presumably from the headquarters in New York City.

In Vermont, appellant's business activities are confined to wholesale and retail marketing of petroleum and related products. Mobil has no oil or gas production or refineries within the State. Although appellant's business activity in Vermont is by no means insignificant, it forms but a small part of the corporation's worldwide enterprise. According to the Vermont corporate income tax returns Mobil filed for the three taxable years in issue, appellant's Vermont sales were $8,554,200, $9,175,931, and $9,589,447, respectively; its payroll in the State was $236,553, $244,577, and $254,938, respectively; and the

---

[1] Appellant has supplied the following table listing the number of foreign subsidiary (more than 50% owned) and nonsubsidiary corporations, as well as domestic nonsubsidiary corporations, of which, on December 31 of the taxable year, it owned, directly or indirectly, 5% or more of the capital stock:

|                                    | 1970 | 1971 | 1972 |
|------------------------------------|------|------|------|
| Foreign Subsidiary Corporations    | 203  | 208  | 216  |
| Foreign Nonsubsidiary Corporations | 185  | 189  | 197  |
| Domestic Nonsubsidiary Corporations| 26   | 27   | 27   |

App. 82.

value of its property in Vermont was $3,930,100, $6,707,534, and $8,236,792, respectively. App. 35–36, 49–50, 63–64. Substantial as these figures are, they, too, represent only tiny portions of the corporation's total sales, payroll, and property.[2]

Vermont imposes an annual net income tax on every corporation doing business within the State. Under its scheme, net income is defined as the taxable income of the taxpayer "under the laws of the United States." Vt. Stat. Ann., Tit. 32, § 5811 (18) (1970 and Supp. 1978).[3] If a taxpayer corporation does business both within and without Vermont, the State taxes only that portion of the net income attributable to it under a three-factor apportionment formula. In order to determine that portion, net income is multiplied by a fraction representing the arithmetic average of the ratios of sales, payroll, and property values within Vermont to those of the corporation as a whole. § 5833 (a).[4]

[2] For the same taxable years, appellant reported aggregate sales of $3,577,148,701, $3,889,353,228, and $4,049,824,161, respectively; total payroll of $380,818,887, $400,087,593, and $428,900,681, respectively; and property valued in the aggregate at $2,871,922,965, $2,995,950,125 and $3,291,757,721, respectively. *Id.*, at 35, 49, 63. For 1972, which is not unrepresentative, the ratios of appellant's Vermont sales, payroll, and property to its sales, payroll, and property "everywhere" were approximately .24%, .06% and .25%, respectively. *Id.*, at 63, 64.

[3] Section 5811 (18) states in pertinent part:

" 'Vermont net income' means, for any taxable year and for any corporate taxpayer, the taxable income of the taxpayer for that taxable year under the laws of the United States, excluding income which under the laws of the United States is exempt from taxation by the states."

[4] Section 5833 (1970 and Supp. 1978) provides in pertinent part:

"(a) . . . If the income of a taxable corporation is derived from any trade, business, or activity conducted both within and without this state, the amount of the corporation's Vermont net income which shall be apportioned to this state, so as to allocate to this state a fair and equitable portion of that income, shall be determined by multiplying that Vermont net income by the arithmetic average of the following factors:

"(1) The average of the value of all the real and tangible property within this state (A) at the beginning of the taxable year and (B) at the

Appellant's net income for 1970, 1971, and 1972, as defined by the Federal Internal Revenue Code, included substantial amounts received as dividends from its subsidiaries and affiliates operating abroad. Mobil's federal income tax returns for the three years showed taxable income of approximately $220 million, $308 million, and $233 million, respectively, of which approximately $174 million, $283 million, and $280 million was net dividend income.[5] On its Vermont returns for these years, however, appellant subtracted from federal taxable income items it regarded as "nonapportionable," including the net dividends. As a result of these subtractions, Mobil's Vermont returns showed a net income of approximately $23 million for 1970 and losses for the two succeeding years. After application of Vermont's apportionment formula, an aggregate tax liability of $1,871.90 to Vermont remained for the 3-year period; except for a minimum tax of $25 for each of 1971 and 1972, all of this was attributable to 1970.[6]

---

end of the taxable year . . . expressed as a percentage of all such property both within and without this state;

"(2) The total wages, salaries, and other personal service compensation paid during the taxable year to employees within this state, expressed as a percentage of all such compensation paid whether within or without this state;

"(3) The gross sales, or charges for services performed, within this state, expressed as a percentage of such sales or charges whether within or without this state."

[5] This information is taken from appellant's Vermont income tax returns, to which copies of its federal returns were attached. App. 33–73.

It appears that the major share of appellant's dividend income for the three years was received from three wholly owned subsidiaries incorporated abroad (Mobil Marine Transportation, Ltd.; Mobil Oil Iraq with Limited Liability; and Pegasus Overseas, Ltd.) and from one affiliate incorporated in Delaware (Arabian American Oil Co. (ARAMCO)) of which appellant owned 10% of the capital stock. Id., at 75–78.

[6] Appellant subtracted amounts representing interest and foreign taxes as well as dividends. It no longer presses its claim that interest and taxes should have been excluded from Vermont's preapportionment tax

The Vermont Department of Taxes recalculated appellant's income by restoring the asserted nonapportionable items to the preapportionment tax base. It determined that Mobil's

base. Appellant's original calculations for the years in question were as follows:

### Year 1970

| | | |
|---|---:|---:|
| Federal Taxable Income | | $220,035,244.23 |
| Less: | | |
| Nonapportionable Income | | |
|   Dividends | $174,211,073.60 | |
|   Interest | 10,520,792.51 | |
|   Foreign Taxes | 12,221,476.88 | |
|     Total | | 196,953,342.99 |
| Apportionable Income | | $23,081,901.24 |
| Net Income Allocable to Vermont | | 30,361.11 |
| Total Vermont Tax | | $1,821.67 |

### Year 1971

| | | |
|---|---:|---:|
| Federal Taxable Income | | $308,253,570.02 |
| Less: | | |
| Nonapportionable Income | | |
|   Dividends | $282,817,008.65 | |
|   Interest | 12,609,826.23 | |
|   Foreign Taxes | 34,659,576.05 | |
|     Total | | 330,086,410.93 |
| Apportionable Income | | ($21,832,840.91) |
| Net Income Allocable to Vermont | | 0.00 |
| Total Vermont Tax (minimum tax) | | $25.00 |

### Year 1972

| | | |
|---|---:|---:|
| Federal Taxable Income | | $232,825,728.27 |
| Less: | | |
| Nonapportionable Income | | |
|   Dividends | $280,623,403.93 | |
|   Interest | 3,905,208.04 | |
|   Foreign Taxes | 38,260,249.40 | |
|     Total | | $322,788,861.37 |
| Apportionable Income | | ($89,963,133.20) |
| Net Income Allocable to Vermont | | 0.00 |
| Total Vermont Tax (minimum tax) | | $25.00 |

App. 37, 34; 51, 48; 65, 62.

aggregate tax liability for the three years was $76,418.77, and deficiencies plus interest were assessed accordingly.[7] Appellant challenged the deficiency assessments before the Commissioner of Taxes. It argued, among other things, that taxation of the dividend receipts under Vermont's corporate income tax violated the Due Process Clause of the Fourteenth Amendment, as well as the Interstate and Foreign Commerce Clause, U. S. Const., Art. I, § 8, cl. 3. Appellant also argued that inclusion of the dividend income in its tax base was inconsistent with the terms of the Vermont tax statute, because it would not result in a "fair" and "equitable" apportionment, and it petitioned for modification of the apportionment. See Vt. Stat. Ann., Tit. 32, § 5833 (b) (1970 and Supp. 1978).[8] It is evident from the transcript of the hearing before the Commissioner that appellant's principal object was to achieve the subtraction of the asserted nonapportionable income from the preapportionment tax base; the alternative request for modification of the apportionment formula went largely undeveloped. See App. 18–31.

The Commissioner held that inclusion of dividend income

---

[7] The Department calculated Mobil's tax liability for 1970 at $19,078.56; for 1971 at $31,955.52; and for 1972 at $25,384.69. App. to Juris. Statement 1a.

[8] Section 5833 (b) provides:

"If the application of the provisions of this section does not fairly represent the extent of the business activities of a corporation within this state, the corporation may petition for, or the commissioner may require, with respect to all or any part of the corporation's business activity, if reasonable:

"(1) Separate accounting;

"(2) The exclusion or modification of any or all of the factors;

"(3) The inclusion of one or more additional factors which will fairly represent the corporation's business activity in this state; or

"(4) The employment of any other method to effectuate an equitable allocation and apportionment of the corporation's income."

By amendment effected by 1971 Vt. Laws, No. 73, § 16, the words "any or all" in subsection (2) replaced the words "either or both."

in the tax base was required by the Vermont statute, and he rejected appellant's Due Process Clause and Commerce Clause arguments.[9]

Mobil sought review by the Superior Court of Washington County. That court reversed the Commissioner's ruling. It held that inclusion of dividend income in the tax base unconstitutionally subjected appellant to prohibitive multiple taxation because New York, the State of appellant's commercial domicile, had the authority to tax the dividends in their entirety. Since New York could tax without apportionment, the court concluded, Vermont's use of an apportionment formula would not be an adequate safeguard against multiple taxation. It agreed with appellant that subtraction of dividend income from the Vermont tax base was the only acceptable approach. App. to Juris. Statement 14a.

The Commissioner, in his turn, appealed to the Supreme Court of Vermont. That court reversed the judgment of the Superior Court. 136 Vt. 545, 394 A. 2d 1147 (1978). The court noted that appellant's quarrel was with the calculation of the tax base and not with the method or accuracy of the statutory apportionment formula. *Id.*, at 547, 394 A. 2d, at 1148. It found a sufficient "nexus" between the corporation and the State to justify an apportioned tax on both appel-

---

[9].In reaching this decision, the Commissioner followed *F. W. Woolworth Co.* v. *Commissioner of Taxes*, 130 Vt. 544, 298 A. 2d 839 (1972), and *Gulf Oil Corp.* v. *Morrison*, 120 Vt. 324, 141 A. 2d 671 (1958). App. to Juris. Statement 6a–7a, 9a–11a. He also rejected, for lack of proof, Mobil's petition for modification of the apportionment formula:

"Any diversion from the standard formula imposes a strong burden of proof on the taxpayer to show that the formula does not fairly represent its business activities in the State of Vermont. . . . Mobil has made no such showing in this case." *Id.*, at 11a.

The Commissioner did allow a modification of the method of dividend "gross-up" for the year 1970 in a manner consistent with *F. W. Woolworth Co.* v. *Commissioner of Taxes*, 133 Vt. 93, 328 A. 2d 402 (1974). This modification is not germane to the present controversy.

lant's investment income and its operating income.[10] The court rejected the "multiple taxation" theory that had prevailed in the Superior Court. In its view, appellant had failed to prove that multiple taxation would actually ensue. New York did not tax the dividend income during the taxable years in question, and "[i]n a conflict between Vermont's apportioned tax on Mobil's investment income and an attempt on New York's part to tax that same income without apportionment, New York might very well have to yield." *Id.*, at 552, 394 A. 2d, at 1151. Accordingly, the court held that no constitutional defect had been established. It remanded the case for reinstatement of the deficiency assessments.

The substantial federal question involved prompted us to note probable jurisdiction. 441 U. S. 941 (1979).

## B

In keeping with its litigation strategy, appellant has disclaimed any dispute with the accuracy or fairness of Vermont's apportionment formula. See Juris. Statement 10; Brief for Appellant 11. Instead, it claims that dividends from a "foreign source" by their very nature are not apportionable income.[11] This election to attack the tax base rather than the formula substantially narrows the issues before us. In deciding this appeal, we do not consider whether application of Vermont's formula produced a fair attribution of appellant's dividend income to that State. Our inquiry is confined

---

[10] The Court also observed, 136 Vt., at 547–548, 394 A. 2d, at 1149, that due process contentions similar to those advanced by Mobil here had been rejected in two Vermont cases that came down after the decision in the present case in the Superior Court. *In re Goodyear Tire & Rubber Co.*, 133 Vt. 132, 335 A. 2d 310 (1975); *F. W. Woolworth Co.* v. *Commissioner of Taxes*, 133 Vt. 93, 328 A. 2d 402 (1974).

[11] The dissent raises *de novo* the issue of appellant's dividend receipts from stockholdings in corporations that apparently operate principally in the United States. See *post*, at 455–457, 460–461. This issue is not encompassed in the questions presented by appellant. See Juris. Statement 2–3.

to the question whether there is something about the character of income earned from investments in affiliates and subsidiaries operating abroad that precludes, as a constitutional matter, state taxation of that income by the apportionment method.

In addressing this question, moreover, it is necessary to bear in mind that Mobil's "foreign source" dividend income is of two distinct types. The first consists of dividends from domestic corporations, organized under the laws of States other than Vermont, that conduct all their operations, and hence earn their income, outside the United States.[12] The second type consists of dividends from corporations both organized and operating abroad. The record in this case fails to supply much detail concerning the activities of the corporations whose dividends allegedly fall into these two categories, but it is apparent, from perusal of such documents in the record as appellant's corporate reports for the years in question, that many of these subsidiaries and affiliates, including the principal contributors to appellant's dividend income, engage in business activities that form part of Mobil's integrated petroleum enterprise. Indeed, although appellant is unwilling to concede the legal conclusion that these activities form part of a "unitary business," see Reply Brief for Appellant 2, n. 1, it has offered no evidence that would undermine the conclusion that most, if not all, of its subsidiaries and affiliates contribute to appellant's worldwide petroleum enterprise.

---

[12] Under the Vermont tax scheme, income falling into this category is subject to apportionment only in part. Because Vermont's statute is geared to the definition of taxable income under federal law, it excludes from the preapportionment tax base 85% of all dividends earned from domestic corporations in which the taxpayer owns less than 80% of the capital stock, and 100% of all dividends earned from domestic corporations in which the taxpayer owns 80% or more of the capital stock. See § 243 of the Internal Revenue Code of 1954, as amended, 26 U. S. C. § 243; Vt. Stat. Ann., Tit. 32, § 5811 (18) (1970 and Supp. 1978).

To justify exclusion of the dividends from income subject to apportionment in Vermont, Mobil offers three principal arguments. First, it argues that the dividends may not be taxed in Vermont because there is no "nexus" between that State and either appellant's management of its investments or the business activities of the payor corporations. Second, it argues that taxation of the dividends in Vermont would create an unconstitutional burden of multiple taxation because the dividends would be taxable in full in New York, the State of commercial domicile. In this context, appellant relies on the traditional rule that dividends are taxable at their "business situs," a rule which it suggests is of constitutional dimension. Third, Mobil argues that the "foreign source" of the dividends precludes state income taxation in this country, at least in States other than the commercial domicile, because of the risk of multiple taxation at the international level. In a related argument, appellant contends that local taxation of the sort undertaken in Vermont prevents the Nation from speaking with a single voice in foreign commercial affairs. We consider each of these arguments in turn.

## II

It long has been established that the income of a business operating in interstate commerce is not immune from fairly apportioned state taxation. *Northwestern States Portland Cement Co.* v. *Minnesota,* 358 U. S. 450, 458–462 (1959); *Underwood Typewriter Co.* v. *Chamberlain,* 254 U. S. 113, 120 (1920); *United States Glue Co.* v. *Oak Creek,* 247 U. S. 321, 328–329 (1918). "[T]he entire net income of a corporation, generated by interstate as well as intrastate activities, may be fairly apportioned among the States for tax purposes by formulas utilizing in-state aspects of interstate affairs." *Northwestern States Portland Cement Co.* v. *Minnesota,* 358 U. S., at 460. For a State to tax income generated in interstate commerce, the Due Process Clause of the Fourteenth Amendment imposes two requirements: a "minimal connection" be-

tween the interstate activities and the taxing State, and a rational relationship between the income attributed to the State and the intrastate values of the enterprise. *Moorman Mfg. Co.* v. *Bair,* 437 U. S. 267, 272–273 (1978); see *National Bellas Hess, Inc.* v. *Department of Revenue,* 386 U. S. 753, 756 (1967); *Norfolk & Western R. Co.* v. *Missouri Tax Comm'n,* 390 U. S. 317, 325 (1968). The requisite "nexus" is supplied if the corporation avails itself of the "substantial privilege of carrying on business" within the State; and "[t]he fact that a tax is contingent upon events brought to pass without a state does not destroy the nexus between such a tax and transactions within a state for which the tax is an exaction." *Wisconsin* v. *J. C. Penney Co.,* 311 U. S. 435, 444–445 (1940).

We do not understand appellant to contest these general principles. Indeed, in its Vermont tax returns for the years in question, Mobil included all its operating income in apportionable net income, without regard to the locality in which it was earned. Nor has appellant undertaken to prove that the amount of its tax liability as determined by Vermont is "out of all appropriate proportion to the business transacted by the appellant in that State." *Hans Rees' Sons* v. *North Carolina ex rel. Maxwell,* 283 U. S. 123, 135 (1931).[13] What appellant does seek to establish, in the due process phase of its argument, is that its *dividend* income must be excepted from the general principle of apportionability because it lacks a satisfactory nexus with appellant's business activities in Vermont. To carve that out as an exception, appellant must demonstrate something about the nature of this income that distinguishes it from operating income, a

---

[13] Application of the Vermont three-factor formula for the three years resulted in attributing to the State the following percentages of the corporation's net income:

|      |           |
|------|-----------|
| 1970 | 0.146032% |
| 1971 | 0.173647% |
| 1972 | 0.182151% |

App. 36, 50, 64.

proper portion of which the State concededly may tax. From appellant's argument we discern two potential differentiating factors: the "foreign source" of the income, and the fact that it is received in the form of dividends from subsidiaries and affiliates.

The argument that the source of the income precludes its taxability runs contrary to precedent. In the past, apportionability often has been challenged by the contention that income earned in one State may not be taxed in another if the source of the income may be ascertained by separate geographical accounting. The Court has rejected that contention so long as the intrastate and extrastate activities formed part of a single unitary business. See *Butler Bros.* v. *McColgan,* 315 U. S. 501, 506–508 (1942); *Ford Motor Co.* v. *Beauchamp,* 308 U. S. 331, 336 (1939); cf. *Moorman Mfg. Co.* v. *Bair,* 437 U. S., at 272. In these circumstances, the Court has noted that separate accounting, while it purports to isolate portions of income received in various States, may fail to account for contributions to income resulting from functional integration, centralization of management, and economies of scale. *Butler Bros.* v. *McColgan,* 315 U. S., at 508–509. Because these factors of profitability arise from the operation of the business as a whole, it becomes misleading to characterize the income of the business as having a single identifiable "source." Although separate geographical accounting may be useful for internal auditing, for purposes of state taxation it is not constitutionally required.

The Court has applied the same rationale to businesses operating both here and abroad. *Bass, Ratcliff & Gretton, Ltd.* v. *State Tax Comm'n,* 266 U. S. 271 (1924), is the leading example. A British corporation manufactured ale in Great Britain and sold some of it in New York. The corporation objected on due process grounds to New York's imposition of an apportioned franchise tax on the corporation's net income. The Court sustained the tax on the strength of its earlier decision in *Underwood Typewriter Co.* v. *Chamberlain, supra,*

where it had upheld a similar tax as applied to a business operating in several of our States. It ruled that the brewer carried on a unitary business, involving "a series of transactions beginning with the manufacture in England and ending in sales in New York and other places," and that "the State was justified in attributing to New York a just proportion of the profits earned by the Company from such unitary business." 266 U. S., at 282.

As these cases indicate, the linchpin of apportionability in the field of state income taxation is the unitary-business principle.[14] In accord with this principle, what appellant must show, in order to establish that its dividend income is not subject to an apportioned tax in Vermont, is that the income was earned in the course of activities unrelated to the sale of petroleum products in that State. *Bass, Ratcliff & Gretton* forecloses the contention that the foreign source of the dividend income alone suffices for this purpose. Moreover, appellant has made no effort to demonstrate that the foreign operations of its subsidiaries and affiliates are distinct in any business or economic sense from its petroleum sales activities in Vermont. Indeed, all indications in the record are to the contrary, since it appears that these foreign activities are part of appellant's integrated petroleum enterprise. In the absence of any proof of discrete business enterprise, Vermont was entitled to conclude that the dividend income's

---

[14] See *United States Steel Corp.* v. *Multistate Tax Comm'n,* 434 U. S. 452, 473–474, nn. 25, 26 (1978). For scholarly discussions of the unitary-business concept see G. Altman & F. Keesling, Allocation of Income in State Taxation 97–102 (2d ed. 1950); Dexter, Taxation of Income from Intangibles of Multistate-Multinational Corporations, 29 Vand. L. Rev. 401 (1976); Hellerstein, Recent Developments in State Tax Apportionment and the Circumscription of Unitary Business, 21 Nat. Tax J. 487, 496 (1968); Keesling & Warren, The Unitary Concept in the Allocation of Income, 12 Hastings L. J. 42 (1960); Rudolph, State Taxation of Interstate Business: The Unitary Business Concept and Affiliated Corporate Groups, 25 Tax L. Rev. 171 (1970).

foreign source did not destroy the requisite nexus with in-state activities.

It remains to be considered whether the form in which the income was received serves to drive a wedge between Mobil's foreign enterprise and its activities in Vermont. In support of the contention that dividend income ought to be excluded from apportionment, Mobil has attempted to characterize its ownership and management of subsidiaries and affiliates as a business distinct from its sale of petroleum products in this country. Various *amici* also have suggested that the division between parent and subsidiary should be treated as a break in the scope of unitary business, and that the receipt of dividends is a discrete "taxable event" bearing no relation to Vermont.

At the outset, we reject the suggestion that anything is to be gained by characterizing receipt of the dividends as a separate "taxable event." In *Wisconsin* v. *J. C. Penney Co.,* *supra,* the Court observed that "tags" of this kind "are not instruments of adjudication but statements of result," and that they add little to analysis. 311 U. S., at 444. Mobil's business entails numerous "taxable events" that occur outside Vermont. That fact alone does not prevent the State from including income earned from those events in the preapportionment tax base.

Nor do we find particularly persuasive Mobil's attempt to identify a separate business in its holding company function. So long as dividends from subsidiaries and affiliates reflect profits derived from a functionally integrated enterprise, those dividends are income to the parent earned in a unitary business. One must look principally at the underlying activity, not at the form of investment, to determine the propriety of apportionability.

Superficially, intercorporate division might appear to be a more attractive basis for limiting apportionability. But the form of business organization may have nothing to do with the underlying unity or diversity of business enterprise. Had

appellant chosen to operate its foreign subsidiaries as separate divisions of a legally as well as a functionally integrated enterprise, there is little doubt that the income derived from those divisions would meet due process requirements for apportionability. Cf. *General Motors Corp.* v. *Washington,* 377 U. S. 436, 441 (1964). Transforming the same income into dividends from legally separate entities works no change in the underlying economic realities of a unitary business, and accordingly it ought not to affect the apportionability of income the parent receives.[15]

We do not mean to suggest that all dividend income received by corporations operating in interstate commerce is necessarily taxable in each State where that corporation does

---

[15] In its reply brief, Mobil submits a new due process argument based on Vermont's failure to require "combined apportionment" which, while including the income of subsidiaries and affiliates as part of appellant's net income, would eliminate intercorporate transfers, such as appellant's dividend income, from that calculation. A necessary concomitant of this would be inclusion of the subsidiaries' and affiliates' sales, payroll, and property in the calculation of the apportionment formula. Reply Brief for Appellant 1–6. The result, presumably, would be advantageous to appellant, since virtually nothing would be added to the "Vermont" numerators of the apportionment factors, while there would be substantial increases in the "everywhere" denominators, resulting in a diminution of the apportionment fraction.

This argument appears to be an afterthought that was not presented to the Vermont tax authorities or to the courts of that State. The evidence in the record surely is inadequate to evaluate the effect of the proposal, its relative impact on appellant, or its potential implications. Moreover, the principal focus of this suggestion is the apportionment formula, not the apportionability of foreign source income. Appellant, we reiterate, took this appeal on the assumption that Vermont's apportionment formula was fair. At this juncture and on these facts, we need not, and do not, decide whether combined apportionment of this type is constitutionally required. In any event, we note that appellant's latter-day advocacy of this combined approach virtually concedes that income from foreign sources, produced by the operations of subsidiaries and affiliates, as a matter of due process is attributable to the parent and amenable to fair apportionment. That is all we decide today.

business. Where the business activities of the dividend payor have nothing to do with the activities of the recipient in the taxing State, due process considerations might well preclude apportionability, because there would be no underlying unitary business. We need not decide, however, whether Vermont's tax statute would reach extraterritorial values in an instance of that kind. Cf. *Underwood Typewriter Co.* v. *Chamberlain,* 254 U. S., at 121. Mobil has failed to sustain its burden of proving any unrelated business activity on the part of its subsidiaries and affiliates that would raise the question of nonapportionability. See *Norton Co.* v. *Department of Revenue,* 340 U. S. 534, 537 (1951); *Butler Bros.* v. *McColgan,* 315 U. S., at 507.[16] We therefore hold that its foreign-source dividends have not been shown to be exempt, as a matter of due process, from apportionment for state income taxation by the State of Vermont.

## III

In addition to its due process challenge, appellant contends that Vermont's tax imposes a burden on interstate and foreign commerce by subjecting appellant's dividend income to a substantial risk of multiple taxation. We approach this argument in two steps. First, we consider whether there was a burden on interstate commerce by virtue of the effect of the Vermont tax relative to appellant's income tax liability in

---

[16] The dissent argues that unrelated business activity is "readily apparent" from the record because "a large number of the corporations . . . from which [Mobil] derived significant dividend income *would seem* neither to be engaged in the petroleum business nor to have any connection whatsoever with Mobil's marketing business in Vermont." *Post,* at 460 (emphasis added). The only evidence advanced in support of this assertion is a list of the names of corporations whose dividend payments are not at issue. See n. 11, *supra.* Furthermore, it may bear repeating that the burden of proof rests upon the appellant and not upon the Commissioner of Taxes. The absence of evidence in the record to decide the issues on which the dissent speculates, *post,* at 460–461, cuts against and not in favor of appellant's cause.

other States. Next, we determine whether constitutional protections for foreign commerce pose additional considerations that alter the result.

A

The effect of the Commerce Clause on state taxation of interstate commerce is a frequently litigated subject that appears to be undergoing a revival of sorts.[17] In several recent cases, this Court has addressed the issue and has attempted to clarify the apparently conflicting precedents it has spawned. See, e. g., Moorman Mfg. Co. v. Bair, 437 U. S., at 276–281; Washington Revenue Dept. v. Association of Wash. Stevedoring Cos., 435 U. S. 734, 743–751 (1978); Complete Auto Transit, Inc. v. Brady, 430 U. S. 274 (1977). In an endeavor to establish a consistent and rational method of inquiry, we have examined the practical effect of a challenged tax to determine whether it "is applied to an activity with a substantial nexus with the taxing State, is fairly apportioned, does not discriminate against interstate commerce, and is fairly related to the services provided by the State." Id., at 279.

Appellant asserts that Vermont's tax is discriminatory because it subjects interstate business to a burden of duplicative taxation that an intrastate taxpayer would not bear. Mobil does not base this claim on a comparison of Vermont's apportionment formula with those used in other States where appellant pays income taxes. Cf. Moorman Mfg. Co. v. Bair, supra; Western Live Stock v. Bureau of Revenue, 303 U. S. 250, 255–256 (1938). Rather, it contends that any appor-

---

[17] In particular, there has been a flurry of litigation in state courts over the Commerce Clause implications of apportioned taxation of income from intangibles. See, e. g., Qualls v. Montgomery Ward & Co., 266 Ark. 207, 585 S. W. 2d 18 (1979); American Smelting & Refining Co. v. Idaho Tax Comm'n, 99 Idaho 924, 592 P. 2d 39 (1979), appeal docketed sub nom. ASARCO Inc. v. Idaho Tax Comm'n, No. 78–1839; W. R. Grace & Co. v. Commissioner of Revenue, 378 Mass. 577, 393 N. E. 2d 330 (1979); Montana Dept. of Revenue v. American Smelting & Refining Co., 173 Mont. 316, 567 P. 2d 901 (1977), appeal dism'd, 434 U. S. 1042 (1978).

tioned tax on its dividends will place an undue burden on that specific source of income, because New York, the State of commercial domicile, has the power to tax dividend income without apportionment. For the latter proposition, appellant cites property tax cases that hold that intangible property is to be taxed either by the State of commercial domicile or by the State where the property has a "business situs." See, e. g., *First Bank Stock Corp.* v. *Minnesota,* 301 U. S. 234, 237 (1937); *Wheeling Steel Corp.* v. *Fox,* 298 U. S. 193, 208–210 (1936); *Louisville & Jeffersonville Ferry Co.* v. *Kentucky,* 188 U. S. 385, 396 (1903); cf. *New York ex rel. Whitney* v. *Graves,* 299 U. S. 366, 372–373 (1937).

Inasmuch as New York does not presently tax the dividends in question, actual multiple taxation is not demonstrated on this record. The Vermont courts placed some reliance on this fact, see, e. g., 136 Vt., at 548, 394 A. 2d, at 1149, and much of the debate in this Court has aired the question whether an actual burden need be shown. Compare *Standard Pressed Steel Co.* v. *Department of Revenue,* 419 U. S. 560, 563–564 (1975), and *Freeman* v. *Hewit,* 329 U. S. 249, 256 (1946), with *Northwestern States Portland Cement Co.* v. *Minnesota,* 358 U. S., at 462–463, and *Northwest Airlines, Inc.* v. *Minnesota,* 322 U. S. 292 (1944). See also *Japan Line, Ltd.* v. *County of Los Angeles,* 441 U. S. 434, 452, n. 17 (1979). We agree with Mobil that the constitutionality of a Vermont tax should not depend on the vagaries of New York tax policy. But the absence of any existing duplicative tax does alter the nature of appellant's claim. Instead of seeking relief from a present tax burden, appellant seeks to establish a theoretical constitutional preference for one method of taxation over another. In appellant's view, the Commerce Clause requires allocation of dividend income to a single situs rather than apportionment among the States.

Taxation by apportionment and taxation by allocation to a single situs are theoretically incommensurate, and if the latter method is constitutionally preferred, a tax based on the former

cannot be sustained. See *Standard Oil Co.* v. *Peck,* 342 U. S. 382, 384 (1952). We find no adequate justification, however, for such a preference. Although a fictionalized situs for intangible property sometimes has been invoked to avoid multiple taxation of ownership, there is nothing talismanic about the concepts of "business situs" or "commercial domicile" that automatically renders those concepts applicable when taxation of income from intangibles is at issue. The Court has observed that the maxim *mobilia sequuntur personam,* upon which these fictions of situs are based, "states a rule without disclosing the reasons for it." *First Bank Stock Corp.* v. *Minnesota,* 301 U. S., at 241. The Court also has recognized that "the reason for a single place of taxation no longer obtains" when the taxpayer's activities with respect to the intangible property involve relations with more than one jurisdiction. *Curry* v. *McCanless,* 307 U. S. 357, 367 (1939). Even for property or franchise taxes, apportionment of intangible values is not unknown. See *Ford Motor Co.* v. *Beauchamp,* 308 U. S., at 335–336; *Adams Express Co.* v. *Ohio State Auditor,* 166 U. S. 185, 222 (1897). Moreover, cases upholding allocation to a single situs for property tax purposes have distinguished income tax situations where the apportionment principle prevails. See *Wheeling Steel Corp.* v. *Fox,* 298 U. S., at 212.

The reasons for allocation to a single situs that often apply in the case of property taxation carry little force in the present context. Mobil no doubt enjoys privileges and protections conferred by New York law with respect to ownership of its stock holdings, and its activities in that State no doubt supply some nexus for jurisdiction to tax. Cf. *First Bank Stock Corp.* v. *Minnesota,* 301 U. S., at 240–241. Although we do not now presume to pass on the constitutionality of a hypothetical New York tax, we may assume, for present purposes, that the State of commercial domicile has the authority to lay some tax on appellant's dividend income as well as on the value of its stock. But there is no reason in theory why

that power should be exclusive when the dividends reflect income from a unitary business, part of which is conducted in other States. In that situation, the income bears relation to benefits and privileges conferred by several States. These are the circumstances in which apportionment is ordinarily the accepted method. Since Vermont seeks to tax income, not ownership, we hold that its interest in taxing a proportionate share of appellant's dividend income is not overridden by any interest of the State of commercial domicile.

## B

What has been said thus far does not fully dispose of appellant's additional contention that the Vermont tax imposes a burden on foreign commerce. Relying upon the Court's decision last Term in *Japan Line, Ltd.* v. *County of Los Angeles,* 441 U. S. 434 (1979), Mobil suggests that dividends from foreign sources must be allocated to the State of commercial domicile, even if dividends from subsidiaries and affiliates operating domestically are not. By accepting the power of the State of commercial domicile to tax foreign-source dividend income, appellant eschews the broad proposition that foreign-source dividends are immune from state taxation. It presses the narrower contention that, because of the risk of multiple taxation abroad, allocation of foreign-source income to a single situs is required at home. Appellant's reasoning tracks the rationale of *Japan Line,* that is, that allocation is required because apportionment necessarily entails some inaccuracy and duplication. This inaccuracy may be tolerable for businesses operating solely within the United States, it is said, because this Court has power to correct any gross overreaching. The same inaccuracy, however, becomes intolerable when it is added to the risk of duplicative taxation abroad, which this Court is powerless to control. Accordingly, the only means of alleviating the burden of overlapping taxes is to adopt an allocation rule.

This argument is unpersuasive in the present context for

several reasons. First, it attempts to focus attention on the effect of foreign taxation when the effect of domestic taxation is the only real issue. By admitting the power of the State of commercial domicile to tax foreign-source dividends *in full,* Mobil necessarily forgoes any contention that local duplication of foreign taxes is proscribed. Thus, the only inquiry of constitutional dimension is the familiar question whether taxation by apportionment at home produces significantly greater tax burdens than taxation by allocation. Once appellant's argument is placed in this perspective, the presence or absence of taxation abroad diminishes in importance.

Second, nothing about the logic of Mobil's position is limited to dividend income. The same contention could be advanced about any income arguably earned from foreign commerce. If appellant's argument were accepted, state taxing commissions would face substantial difficulties in attempting to determine what income does or does not have a foreign source.

Third, appellant's argument underestimates the power of this Court to correct excessive taxation on the field where appellant has chosen to pitch its battle. A discriminatory effect on foreign commerce as a result of multiple state taxation is just as detectable and corrigible as a similar effect on commerce among the States. Accordingly, we see no reason why the standard for identifying impermissible discrimination should differ in the two instances.

Finally, acceptance of appellant's argument would provide no guarantee that allocation will result in a lesser domestic tax burden on dividend income from foreign sources. By appellant's own admission, allocation would give the State of commercial domicile the power to tax that income in full, without regard to the extent of taxation abroad. Unless we indulge in the speculation that a State will volunteer to become a tax haven for multinational enterprises, there is no reason to suspect that a State of commercial domicile will be any less vigorous in taxing the whole of the dividend income

than a State like Vermont will be in taxing a proportionate share.

Appellant's attempted analogy between this case and *Japan Line* strikes us as forced. That case involved ad valorem property taxes assessed directly upon instrumentalities of foreign commerce. As has been noted, the factors favoring use of the allocation method in property taxation have no immediate applicability to an income tax. *Japan Line,* moreover, focused on problems of duplicative taxation at the international level, while appellant here has confined its argument to the wholly different sphere of multiple taxation among our States. Finally, in *Japan Line* the Court was confronted with actual multiple taxation that could be remedied only by adoption of an allocation approach. As has already been explained, in the present case we are not similarly impelled.

Nor does federal tax policy lend additional weight to appellant's arguments. The federal statutes and treaties that Mobil cites, Brief for Appellant 38–43, concern problems of multiple taxation at the international level and simply are not germane to the issue of multiple state taxation that appellant has framed. Concurrent federal and state taxation of income, of course, is a well-established norm. Absent some explicit directive from Congress, we cannot infer that treatment of foreign income at the federal level mandates identical treatment by the States. The absence of any explicit directive to that effect is attested by the fact that Congress has long debated, but has not enacted, legislation designed to regulate state taxation of income. See H. R. Rep. No. 1480, 88th Cong., 2d Sess. (1964); H. R. Rep. No. 565, 89th Cong., 1st Sess. (1965); H. R. Rep. No. 952, 89th Cong., 1st Sess. (1965); Hearings on State Taxation of Interstate Commerce before the Subcommittee on State Taxation of Interstate Commerce of the Senate Committee on Finance, 93d Cong., 1st Sess. (1973); cf. *United States Steel Corp.* v. *Multistate Tax Comm'n,* 434 U. S. 452, 456, n. 4 (1978). Legislative proposals have provoked debate over issues closely related to the

present controversy. See, e. g., New York State Bar Assn. Tax Section Committee on Interstate Taxation, Proposals for Improvement of Interstate Taxation Bills (H. R. 1538 and S. 317), 25 Tax Lawyer 433 (1971). Congress in the future may see fit to enact legislation requiring a uniform method for state taxation of foreign dividends. To date, however, it has not done so.

## IV

In sum, appellant has failed to demonstrate any sound basis, under either the Due Process Clause or the Commerce Clause, for establishing a constitutional preference for allocation of its foreign-source dividend income to the State of commercial domicile. Because the issue has not been presented, we need not, and do not, decide what the constituent elements of a fair apportionment formula applicable to such income would be. We do hold, however, that Vermont is not precluded from taxing its proportionate share.

The judgment of the Supreme Court of Vermont is affirmed.

*It is so ordered.*

MR. JUSTICE STEWART and MR. JUSTICE MARSHALL took no part in the consideration or decision of this case.

MR. JUSTICE STEVENS, dissenting.

The Court today decides one substantive question and two procedural questions. Because of the way in which it resolves the procedural issues, the Court's substantive holding is extremely narrow. It is carefully "confined to the question whether there is something about the character of income earned from investments in affiliates and subsidiaries operating abroad that precludes, as a constitutional matter, state taxation of that income by the apportionment method." *Ante*, at 434-435.[1] Since that question has long since been

---

[1] Moreover, in the last few sentences of n. 15, *ante*, at 441, the Court emphatically repeats that it has decided nothing more than that the Due

answered in the negative, see, *e. g., Bass, Ratcliff & Gretton, Ltd.* v. *State Tax Comm'n,* 266 U. S. 271, the Court's principal holding is unexceptional.

The Court's substantive holding rests on the assumed premises (1) that Mobil's investment income and its income from operations in Vermont are inseparable parts of one unitary business and (2) that the entire income of that unitary business has been accurately and fairly apportioned between Vermont and the rest of the world—assuming the constitutional validity of including any foreign income in the allocation formula. The Court holds—as I understand its opinion—that Mobil "offered no evidence" challenging the first premise,[2] and that it expressly disclaimed any attack on the second.[3]

---

Process Clause does not preclude the attribution of foreign-source income to a parent and subjecting such income to fair apportionment. It states: "Appellant, we reiterate, took this appeal on the assumption that Vermont's apportionment formula was fair. At this juncture and on these facts, we need not, and do not, decide whether combined apportionment of this type is constitutionally required. In any event, we note that appellant's latter-day advocacy of this combined approach virtually concedes that income from foreign sources, produced by the operations of subsidiaries and affiliates, as a matter of due process is attributable to the parent and amenable to fair apportionment. That is all we decide today."

[2] *Ante,* at 435. See also *ante,* at 441–442:

"We do not mean to suggest that all dividend income received by corporations operating in interstate commerce is necessarily taxable in each State where that corporation does business. Where the business activities of the dividend payor have nothing to do with the activities of the recipient in the taxing State, due process considerations might well preclude apportionability, because there would be no underlying unitary business. We need not decide, however, whether Vermont's tax statute would reach extraterritorial values in an instance of that kind. Cf. *Underwood Typewriter Co.* v. *Chamberlain,* 254 U. S. [113], 121. Mobil has failed to sustain its burden of proving any unrelated business activity on the part of its subsidiaries and affiliates that would raise the question of nonapportionability."

[3] "In keeping with its litigation strategy, appellant has disclaimed any

I disagree with both of these procedural holdings. I am persuaded that the record before us demonstrates either (1) that Mobil's income from its investments and its income from the sale of petroleum products in Vermont are not parts of the same "unitary business," as that concept has developed in this Court's cases; or (2) that if the unitary business is defined to include both kinds of income, Vermont's apportionment formula has been applied in an arbitrary and unconstitutional way. To explain my position, it is necessary first to recall the limited purpose that the unitary-business concept serves in this kind of case, then to identify the two quite different formulations of Mobil's "unitary business" that could arguably support Vermont's application of its apportionment formula to Mobil's investment income, and finally to show why on this record Mobil is entitled to relief using either formulation. Because I also believe that Mobil has done nothing to waive its entitlement, I conclude that the Court's substantive holding is inadequate to dispose of Mobil's contentions.

## I

It is fundamental that a State has no power to impose a tax on income earned outside of the State.[4] The out-of-state

---

dispute with the accuracy or fairness of Vermont's apportionment formula. See Juris. Statement 10; Brief for Appellant 11. Instead, it claims that dividends from a 'foreign source' by their very nature are not apportionable income. This election to attack the tax base rather than the formula substantially narrows the issues before us. In deciding this appeal, we do not consider whether application of Vermont's formula produced a fair attribution of appellant's dividend income to that State." *Ante*, at 434.

[4] As we said in *Moorman Mfg. Co. v. Bair*, 437 U. S. 267, 272–273:

"The Due Process Clause places two restrictions on a State's power to tax income generated by the activities of an interstate business. First, no tax may be imposed unless there is some minimal connection between those activities and the taxing State. *National Bellas Hess, Inc. v. Department of Revenue*, 386 U. S. 753, 756. This requirement was plainly satisfied here. Second, the income attributed to the State for tax purposes

income of a business that operates in more than one State is subject to examination by the taxing State only because of "the impossibility of allocating specifically the profits earned by the processes conducted within its borders." *Underwood Typewriter Co.* v. *Chamberlain*, 254 U. S. 113, 121. An apportionment formula is an imperfect, but nevertheless acceptable, method of measuring the in-state earnings of an integrated business. "It owes its existence to the fact that with respect to a business earning income through a series of transactions beginning with manufacturing in one State and ending with a sale in another, a precise—or even wholly logical—determination of the State in which any specific portion of the income was earned is impossible." *Moorman Mfg. Co.* v. *Bair*, 437 U. S. 267, 286 (POWELL, J., dissenting).

In the absence of any decision by Congress to prescribe uniform rules for allocating the income of interstate businesses to the appropriate geographical source, the Court has construed the Constitution as allowing the States wide latitude in the selection and application of apportionment formulas. See, *e. g., id.*, at 278–280. Thus an acceptable formula may allocate income on the basis of the location of tangible assets,

must be rationally related to 'values connected with the taxing State.' *Norfolk & Western R. Co.* v. *State Tax Comm'n*, 390 U. S. 317, 325."

See also Rudolph, State Taxation of Interstate Business: The Unitary Business Concept and Affiliated Corporate Groups, 25 Tax L. Rev. 171, 181 (1970) (hereinafter State Taxation): "The basic proposition can be simply stated: At least as far as nondomiciliary corporations are concerned, a state may only tax income arising from sources within the state. Or, put differently, it cannot give its income tax extraterritorial effect."

To put it still differently, if, in a particular case, use of an allocation formula has the effect of taxing income earned by an interstate entity outside the State, it could alternatively be said to have the effect of taxing the income earned by that entity inside the State at a rate higher than that used for a comparable, wholly intrastate business, a discrimination that violates the Commerce Clause.

*Underwood Typewriter, supra,* on the basis of gross sales, *Moorman, supra,* or—as is more typical today—by an averaging of three factors: payroll, sales, and tangible properties. See, *e. g., Butler Bros.* v. *McColgan,* 315 U. S. 501, 505. In that case the Court explained:

> "We cannot say that property, pay roll, and sales are inappropriate ingredients of an apportionment formula. We agree with the Supreme Court of California that these factors may properly be deemed to reflect 'the relative contribution of the activities in the various states to the production of the total unitary income,' so as to allocate to California its just proportion of the profits earned by appellant from this unitary business. And no showing has been made that income unconnected with the unitary business has been used in the formula." *Id.,* at 509.

The justification for using an apportionment formula to measure the in-state earnings of a unitary business is inapplicable to out-of-state earnings from a source that is unconnected to the business conducted within the State. This rather obvious proposition is recognized by the commentators [5] and is noted in our opinions.[6] If a taxpayer proves by

---

[5] See, *e. g.,* Keesling & Warren, The Unitary Concept In the Allocation of Income, 12 Hastings L. J. 42, 48 (1960):

"In applying the foregoing definitions, it must be kept clearly in mind that although in particular instances all the activities of a given taxpayer may constitute a single business, in other instances the activities may be segregated or divided into a number of separate businesses. It is only where the activities within and without the state constitute inseparable parts of a single business that the classification of unitary should be used."

[6] In *Butler Bros.,* the Court pointed out that no showing had been made that "income unconnected with the unitary business has been used in the formula," 315 U. S., at 509. And in *Moorman Mfg. Co., supra,* we noted:

" 'Interest, dividends, rents, and royalties (less related expenses) received in connection with business in the state, shall be allocated to the

clear and cogent evidence that the income attributed to the State by an apportionment formula is " 'out of all appropriate proportion to the business transacted . . . in that State,' " see *Moorman, supra,* at 274, the assessment cannot stand.

As Mr. Justice Holmes wrote, with respect to an Indiana property tax on the unitary business conducted by an express company:

> "It is obvious however that this notion of organic unity may be made a means of unlawfully taxing the privilege [of carrying on commerce among the States], or property outside the State, under the name of enhanced value or good will, if it is not closely confined to its true meaning. So long as it fairly may be assumed that the different parts of a line are about equal in value a division by mileage is justifiable. But it is recognized in the cases that if for instance a railroad company had terminals in one State equal in value to all the rest of the line through another, the latter State could not make use of the unity of the road to equalize the value of every mile. That would be taxing property outside of the State under a pretense." *Fargo* v. *Hart,* 193 U. S. 490, 499–500.

In this case the "notion of organic unity" of Mobil's far-flung operations is applied solely for the purpose of making a fair determination of its Vermont earnings. Mobil does not dispute Vermont's right to treat its operations in Vermont as part of a unitary business and to measure the income attribut-

---

state, and where received in connection with business outside the state, shall be allocated outside of the state.' Iowa Code § 422.33 (1) (*a*) (1977). "In describing this section, the Iowa Supreme Court stated that 'certain income, the geographical source of which is easily identifiable, is allocated to the appropriate state.' 254 N. W. 2d 737, 739. Thus, for example, rental income would be attributed to the State where the property was located. And in appellant's case, this section operated to exclude its investment income from the tax base." 437 U. S., at 269, n. 1. See also State Taxation 185.

able to Vermont on the basis of the three-factor formula that compares payroll, sales, and tangible properties in that State with the values of those factors in the whole of the unitary business. Mobil's position, simply stated, is that it is grossly unfair to assign any part of its investment income to Vermont on the basis of those factors. To evaluate that position, it is necessary to identify the unitary business that produces the income subject to taxation by Vermont.

## II

Mobil's operations in Vermont consist solely of wholesale and retail marketing of petroleum products. Those operations are a tiny part of a huge unitary business that might be defined in at least three different ways.

First, as Mobil contends, the business might be defined to include all of its operations, but to exclude the income derived from dividends paid by legally separate entities.[7]

Second, as the Supreme Court of Vermont seems to have done,[8] the unitary business might be defined to include not only all of Mobil's operations, but also the income received from all of its investments in other corporations, regardless

---

[7] Under this definition, Mobil computes its Vermont tax base for 1970 at approximately $23 million. On the basis of Vermont's three-factor formula, it computes Vermont's share of its total operating income as .146%, and it attributes the remaining 99.854% of the total to other locations. Using those figures, Mobil stated its Vermont taxable income to be approximately $30,000, which, when multiplied by 6%, the applicable tax rate, produced a total tax liability for 1970 of $1,821.67.

It would seem that in defining the unitary business in this way, it would be open to Vermont to exclude the payroll and property connected with the management of Mobil's investment income from the denominator of the apportionment factor, which would effectively raise Vermont's share of Mobil's total operating income above the .146% figure. Thus, while I believe that the amount Vermont claims Mobil earned in the State is obviously excessive, it is also probably true that Mobil's Vermont earnings for 1970 are somewhat greater than the approximately $30,000 it computed.

[8] 136 Vt. 545, 546, 394 A. 2d 1147, 1148 (1978).

of whether those other corporations are engaged in the same kind of business as Mobil,[9] and regardless of whether Mobil has a controlling interest in those corporations.[10]

---

[9] Vermont has treated Mobil's dividend income from the following corporations as part of the relevant unitary business:

Baltimore Gas & Electric
Bank of New York
Business Development Corporation of N. C.
Cincinnati Gas & Electric
Connecticut Gas & Power
Canner's Steam Company, Inc.
Continental Oil and Asphalt Company
Dallas Power & Light
Dayton Power & Light
Duke Power Company
Duquesne Light Company
Florida Power Corporation
General Royalties
Gulf States Utilities Company
Hartford Electric Light Company
Houston Lighting and Power Company
Illinois Power Company
Monongahela Power Company
Northern Indiana Public Service Company
Northern State Power Company
Pacific Gas and Electric Company
Pacific Lighting Corporation
Public Service Electric & Gas Company
Rochester Gas & Electric Company
San Diego Gas & Electric Company
Southern California Edison Company
Texas Electric Service Company
Texas Power & Light Company
Union Electric Company
United Illuminating Company
West Penn Power Company
Atlantic City Electric Company
Brooklyn Union Gas Company
Detroit Edison Company
Iowa-Illinois Gas & Electric Company

Third, Mobil's unitary business might be defined as encompassing not only the operations of the taxpayer itself but also the operations of all affiliates that are directly or indirectly engaged in the petroleum business. The Court seems to assume that this definition justifies Vermont's assessment in this case.

Mobil does not contend that it would be unfair for Vermont to apply its three-factor formula to the first definition of its unitary business. It has no quarrel with apportionment formulas generally, not even Vermont's. But by consistently arguing that its income from dividends should be entirely excluded from the apportionment calculation, Mobil has directly challenged any *application* of Vermont's formula based on either the second or the third definition of its unitary business. I shall briefly explain why the record is sufficient to support that challenge.

## III

Under the Supreme Court of Vermont's conception of the relevant unitary business—the second of the three alternative definitions just posited—there is no need to consider the character of the operations of the corporations that have paid dividends to Mobil. For Vermont automatically included all of the taxpaying entity's investment income in the tax base. Such an approach simply ignores the *raison d'être* for apportionment formulas.

---

Indiana & Michigan Electric Company
Philadelphia Electric Company
Public Service Company of Colorado
New York Incorporated Corporation
See App. 77–78.

[10] Mobil has only small minority interests in the corporations listed in footnote 9. It also received dividends in 1970 of over $115 million from a 10% interest in the Arabian American Oil Company. By including Mobil's dividend income, some $174 million in 1970, in the apportionable tax base, and multiplying the apportionable tax base thus comprised by .146%, Vermont computed Mobil's 1970 tax liability to be $19,078.56.

458

We may assume that there are cases in which it would be appropriate to regard modest amounts of investment income as an incidental part of a company's overall operations and to allocate it between the taxing State and other jurisdictions on the basis of the same factors as are used to allocate operating income.[11] But this is not such a case. Mobil's investment income is far greater than its operating income.[12]

---

[11] Because there is no necessary correlation between the levels of profitability of investment income and marketing income, if more than incidental amounts of investment income are used in an averaging formula intended to measure marketing income, inaccuracy is sure to result.

[12] For the year 1970, appellant had dividend income of approximately $174 million as compared with what it calculated to be apportionable income of approximately $23 million. This case is therefore comparable to the example given by Keesling and Warren in their article, The Unitary Concept in the Allocation of Income, 12 Hastings L. J. 42, 52–53 (1960):

"*Example* 1. A company with a commercial domicile in California, where its headquarters are located, is engaged in the operation of a system of railway lines throughout the western part of the United States. Over the years it has accumulated large reserves which are invested for the most part in stocks and bonds of other companies, from which it derives substantial income in the form of dividends and interest. The investment activities are carried on in the headquarters' office where the railroad operations are managed and controlled. Some individuals devote their entire time to the investment activities, whereas others, including a number of officers, devote part of their time to both the investment activities and the railroad operations.

"Although both activities are commonly owned and managed, and there is some common use of personnel and facilities, and although some practical difficulties may be experienced in segregating the expenses of the investment activities, clearly it would be wrong to consider that the company is engaged in only one business and that the entire income of the company should be apportioned within and without the state by means of a formula. Notwithstanding the common elements, there are two distinct series of income-producing activities. This conclusion follows from the fact that the income from dividends and interest can be identified as being derived from the stocks and bonds and the activities related thereto, and not in any way attributable to the general railroad operations carried on within and without the state. Since stocks and bonds and other intangibles are considered to have a location at the commercial domicile of the

Clearly, it is improper simply to lump huge quantities of investment income that have no special connection with the taxpayer's operations in the taxing State into the tax base and to apportion it on the basis of factors that are used to allocate operating income.[13] The Court does not reject this reasoning; rather, its opinion at least partly disclaims reliance on any such theory.[14]

The Court appears to rely squarely on the third alternative approach to defining a unitary business. It assumes that Vermont's inclusion of the dividends in Mobil's apportionable tax base is predicated on the notion that the dividends represent the income of what would be the operating divisions of the Mobil Oil Corporation if Mobil and its affiliates were a single, legally integrated enterprise, rather than a corporation with numerous interests in other, separate corporations that pay it dividends. *Ante*, at 440–441.[15] Theoretically, that sort

---

owner, and since all of the investment activities take place in California, the investment income should be computed separately and assigned entirely to California.

"The income from the railroad operations can likewise be identified as being derived from a distinct series of transactions, which should be considered as constituting a business separate and distinct from the investment activities. Since the railroad operations are carried on partly within and partly without the state, it is a unitary business and hence the income from the railway business as a whole should first be computed and apportioned within and without California by means of an appropriate allocation formula." (Footnote omitted.)

[13] No one could seriously maintain that if a wealthy New York resident should open a gas station in Vermont, Vermont could use his dividends as a measure of the profitability of his gas station.

[14] See n. 2, *supra*.

[15] "Had appellant chosen to operate its foreign subsidiaries as separate divisions of a legally as well as a functionally integrated enterprise, there is little doubt that the income derived from those divisions would meet due process requirements for apportionability. Cf. *General Motors Corp.* v. *Washington*, 377 U. S. 436, 441 (1964). Transforming the same income into dividends from legally separate entities works no change in the underlying economic realities of a unitary business, and accordingly it ought not to affect the apportionability of income the parent receives."

of definition is unquestionably acceptable.[16]    But there are at least three objections to its use in this case.

First, notwithstanding the Court's characterization of the record, it is readily apparent that a large number of the corporations in which Mobil has small minority interests and from which it derived significant dividend income would seem neither to be engaged in the petroleum business nor to have any connection whatsoever with Mobil's marketing business in Vermont.[17]    Second, the record does not disclose whether the earnings of the companies that pay dividends to Mobil are even approximately equal to the amount of the dividends.[18]

But of greatest importance, the record contains no information about the payrolls, sales or property values of any of those corporations, and Vermont has made no attempt to incorporate them into the apportionment formula computa-

---

[16] "It seems clear, strictly as a logical proposition, that foreign source income is no different from any other income when it comes to determining, by formulary apportionment, the appropriate share of the income of a unitary business taxable by a particular state.    This does not involve state taxation of foreign source income any more than does apportionment—in the case of a multistate business—involve the taxation of income arising in other states.    In both situations the total income of the unitary business simply provides the starting point for computing the in-state income taxable by the particular state. . . .

"Obviously, if the foreign source income is included in the base for apportionment, foreign property, payrolls and sales must be included in the apportionment fractions.    This was recognized in *Bass* [, *Ratcliff & Gretton, Ltd.* v. *State Tax Comm'n*, 266 U. S. 271]. . . ."    State Taxation 205.

[17] See n. 9, *supra*.

[18] A corporation's decision as to how much of its earnings to pay out in dividends is subject to many variables.    Nothing says that 100% must be passed through to the stockholders.    A corporation is not a partnership.    Indeed, depending on the state of the corporation's finances, dividends could conceivably even exceed 100% of the earnings.    In any event, at least for those corporations in which it has only a minority interest, Mobil cannot control the percentage of their earnings that is paid out in dividends.

tions. Unless the sales, payroll, and property values connected with the production of income by the payor corporations are added to the denominator of the apportionment formula, the inclusion of earnings attributable to those corporations in the apportionable tax base will inevitably cause Mobil's Vermont income to be overstated.[19]

Either Mobil's worldwide "petroleum enterprise," *ante,* at 435, is all part of one unitary business, or it is not; if it is, Vermont must evaluate the entire enterprise in a consistent manner. As it is, it has indefensibly used its apportionment methodology artificially to multiply its share of Mobil's 1970 taxable income perhaps as much as tenfold.[20] In my judgment, the record is clearly sufficient to establish the validity of Mobil's objections to what Vermont has done here.

## IV

The Court does not confront these problems because it concludes that Mobil has in effect waived any objections with respect to them. Although the Court's effort to avoid constitutional issues by narrowly constricting its holding is commendable, I believe it has seriously erred in its assessment of the procedural posture of this case.

It is true that appellant has disclaimed any dispute with "Vermont's method of apportionment." Brief for Appellant 11. And, admittedly, appellant has confused its cause by variously characterizing its attack in its main brief and reply brief. But contrary to the Court's assertions, see nn. 1, 3, *supra,* appellant did not disclaim any dispute with the accuracy or fairness of the application of the formula in this case. Mobil merely disclaimed any attack on Vermont's

---

[19] See n. 16, *supra.*

[20] The net result of the inclusion of the out-of-state investment income and the exclusion of the sales, payroll, and property factors that produce that investment income is to increase Mobil's tax liability to Vermont for 1970 from the $1,821.67 computed by Mobil to $19,078.56.

*method* of apportionment generally to contrast its claims in this case with the sort of challenge to Iowa's single-factor formula that was rejected in *Moorman.*

The question whether Vermont may include investment income in the apportionable tax base should not be answered in the abstract without consideration of the other factors in the allocation formula. The apportionable tax base is but one multiplicand in the formula. Appellant's challenge to the inclusion of investment income in that component necessarily carries with it a challenge to the product.

Because of the inherent interdependence of the issues in a case of this kind, it seems clear to me that Mobil has not waived its due process objections to Vermont's assessment. Appellant's disclaimer of a *Moorman* style attack cannot fairly be interpreted as a concession that makes its entire appeal a project without a purpose. On the contrary, its argument convincingly demonstrates that the inclusion of its dividend income in the apportionable tax base has produced a palpably arbitrary measure of its Vermont income.

In sum, if Vermont is to reject Mobil's calculation of its tax liability, two courses are open to it: (1) it may exclude Mobil's investment income from the apportionable tax base and also exclude the payroll and property used in managing the investments from the denominator of the apportionment factor; or (2) it may undertake the more difficult and risky task of trying to create a consolidated income statement of Mobil's entire unitary business, properly defined. The latter alternative is permissible only if the statement fairly summarizes consolidated earnings, and takes the payroll, sales, and property of the payor corporations into account. Because Vermont has employed neither of these alternatives, but has used a method that inevitably overstates Mobil's earnings in the State, I would reverse the judgment of the Supreme Court of Vermont.