SUPER VALU STORES, INC. v. COMMISSIONER OF TAXATION.

190 N. W. (2d) 67.

August 27, 1971—No. 42759.

*Dorsey, Marquart, Windhorst, West & Halladay, John W. Windhorst,* and *Thomas O. Moe,* for relator.

*Warren Spannaus,* Attorney General, and *C. Hamilton Luther,* Special Assistant Attorney General, for respondent.

Heard before Knutson, C. J., and Nelson, Murphy, Otis, and Rogosheske, JJ.

ROGOSHESKE, JUSTICE.

Taxpayer, Super Valu Stores, Inc., seeks review of a decision of the Tax Court which affirms an order of the commissioner of taxation. The commissioner's order determined that taxpayer was not entitled to an ordinary loss deduction on its 1962 income tax return for the loss sustained upon liquidation of its capital investment in Supercenter, Inc., claimed to be an affiliate corporation. The taxpayer claims that it is entitled to either a worthless-security stock deduction or, in the alternative, a bad-debt deduction, and the primary issue is whether the evidence sustains the Tax Court's finding that the stock of Supercenter, Inc., was not worthless at the time of liquidation. We affirm the Tax Court.

The taxpayer is a corporation organized under the laws of Delaware, having its principal place of business in Hopkins, Minnesota, and its commercial domicile in Minnesota. It is engaged in the wholesale food business, supplying voluntarily-affiliated and independently-owned retail stores in Minnesota and surrounding states with foods; some nonfood items; and administrative, operating, financial, and leasing services. In addition, taxpayer operates a number of retail stores itself.

On February 21, 1961, taxpayer incorporated a subsidiary Minnesota corporation, Supercenter, Inc. Its initial capital investment in Supercenter totaled $801,000, represented by 2,010 of 3,000 shares of Class A common voting stock with a par value

of $100 per share, and 6,000 shares of Class B preferred stock with a par value of $100 per share. Ralph J. Harmon, president and manager of Supercenter, owned the remaining 990 shares of Class A stock.

Supercenter was organized to conduct a pilot retail discount department store in a leased building in Columbia Heights, a suburb of Minneapolis. In addition to the department store, the operation included a coin-operated laundry and dry-cleaning establishment and a grocery store with a bakery and a delicatessen department. Supercenter commenced business in November 1961, and by the end of December a substantial operating loss had been incurred. The department store operation was conducted by Supercenter until June 1962 when it was taken over by Zayre Corporation, an unrelated company which subleased the premises and took over the store fixtures and equipment. Supercenter continued to operate the grocery store, bakery, delicatessen, and coin-operated laundry and dry-cleaning establishment until September 29, 1962.

Taxpayer recapitalized the operation on June 11, 1962, and Supercenter's articles of incorporation were amended at that time, changing the number and par value of authorized and outstanding shares of stock. After recapitalization, taxpayer had invested $1,801,000 in Class A stock and $300,000 in Class B stock, bringing its holdings from 67 percent to 95.7 percent of the outstanding Class A shares.

On September 28, 1962, a plan for complete liquidation of Supercenter, Inc., was adopted pursuant to Internal Revenue Code of 1954, § 332 (68A Stat. 102, 26 USCA, § 332) and Minn. St. 290.134, subd. 2. From the time it began operating until liquidation, Supercenter incurred a net operating loss of $1,865,736.65. This loss was claimed by taxpayer in its Federal and Minnesota income tax returns for 1962 as a carryover net operating loss deduction. On September 29, 1962, all of its assets were distributed to its shareholders, Ralph J. Harmon and the taxpayer. Harmon received a cancellation of $1,497.83 indebtedness

as his distribution in liquidation, and taxpayer received the remainder of Supercenter's assets subject to its liabilities. In its 1962 income tax returns taxpayer reported that the total Supercenter assets received by it amounted to $1,146,672.85, while Supercenter's liabilities totaled $813,418.19. Thus, the book value of properties taxpayer received from Supercenter on liquidation, as reported in its 1962 income tax returns, was $333,254.66, the difference between assets and liabilities. This property was in the form of equipment and a going business consisting of the grocery store, bakery, delicatessen, and self-service laundry and dry-cleaning establishment, all of which taxpayer continued to operate until July 1965, when the building was destroyed by fire.

There can be no doubt that the taxpayer suffered a loss of most of its capital investment, which, after the additional purchase of $1,300,000 worth of stock, totaled $2,101,000. There is, furthermore, no doubt that this loss is deductible, but the critical problem is the type of loss taxpayer suffered and to what extent the loss is deductible under our income tax statute. The commissioner's position, upheld by the Tax Court, is that the taxpayer incurred a capital loss of $1,767,745, represented by its investment of $2,101,000 in Supercenter stock less the $333,255 value of the properties received upon Supercenter's liquidation. This position is understandably unsatisfactory to the taxpayer since such a loss could be deducted only to the extent of the taxpayer's capital gains for the taxable year (plus the lesser of the taxpayer's net income or $1,000 in the case of the Minnesota tax return). Minn. St. 290.16, subd. 5; Internal Revenue Code of 1954, § 1211(a) (68A Stat. 321, 26 USCA, § 1211[a]). Such a deduction was of no practical benefit to taxpayer since capital gains are seldom, if ever, experienced in its business activities. Consequently, the taxpayer understandably and properly sought to qualify the loss suffered as deductible under other provisions of our income tax laws.

In its initial appeal to the Tax Court, the taxpayer contended that it was entitled to take the entire net operating loss reflected

by the balance sheet of Supercenter. Minn. St. 290.138, subd. 1, provides for the carryover of such net operating losses:

"(a)   In the case of the acquisition of assets of a corporation by another corporation:

"(1)   in a distribution to such other corporation to which section 290.134, subdivision 2 (relating to liquidations of subsidiaries) applies * * *

\* \* \* \* \*

"(c)   The items referred to in clause (a) are:

"(1)   The net operating loss carryovers * * *."

The commissioner, by order dated August 18, 1965, allowed this treatment of the loss but, over taxpayer's objections, reduced the deduction by the amount of Federal income taxes it paid in 1962, resulting in a deduction of only $228,269.83. At a time when the taxpayer's appeal was still pending before the Tax Court, the commissioner's interpretation of the statutes was upheld in Reuben L. Anderson-Cherne, Inc. v. Hatfield, 279 Minn. 478, 158 N. W. (2d) 840. On this appeal taxpayer is not challenging the commissioner's determination of the amount of net operating loss deduction allowable as a carryover under § 290.138, subd. 1(a, c).

Because its ownership of Class A stock was increased from 67 percent to 95.7 percent, taxpayer also sought a deduction under Minn. St. 290.09, subd. 5(g), for loss resulting from stock of an affiliated corporation becoming worthless in the taxable year. The pertinent sections of that statute under which the taxpayer sought to qualify read as follows:

"(a)   There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise.

\* \* \* \* \*

"(g)(1)   If any security which is a capital asset becomes worthless during the taxable year, the loss resulting therefrom

shall * * * be treated as a loss from the sale or exchange, on the last day of the taxable year, of a capital asset.

\* \* \* \* \*

"(3) For purposes of paragraph (1), any security in a corporation affiliated with a taxpayer which is a domestic corporation shall not be treated as a capital asset. For purposes of the preceding sentence, a corporation shall be treated as affiliated with the taxpayer only if:

"(A) At least 95 percent of each class of its stock is owned directly by the taxpayer, and

"(B) More than 90 percent of the aggregate of its gross receipts for all taxable years has been from sources other than royalties, rents * * *, dividends, interest * * *, annuities, and gains from sales or exchanges of stocks and securities."

In accordance with the latter provisions quoted, a taxpayer may be allowed to deduct worthless securities as an ordinary loss if it owns at least 95 percent of each class of stock of the affiliated corporation. The commissioner did not allow such a deduction, and the Tax Court, by order dated February 28, 1967, affirmed on the ground that this was not the type of affiliation intended by the legislature because taxpayer's investment in additional stock in Supercenter, which brought its ownership to 95 percent, lacked a business purpose.

Because it was subsequently determined that its February 28 order was based on facts not in evidence, the Tax Court granted a new trial at which time evidence of a business purpose for the stock transfer and for an alternative claimed bad-debt deduction was introduced. Following the new trial, the Tax Court reaffirmed the commissioner's determination on the grounds that the taxpayer had failed to establish either that Supercenter stock was worthless in 1962 or that such stock was stock of an affiliated corporation within the meaning of § 290.09, subd. 5(g)(3). Since, in order to qualify for this type of loss deduction, taxpayer was required by statute to establish both that the securities were worthless and that Supercenter was a corporation

affiliated with taxpayer, the conclusion that Supercenter was not affiliated with taxpayer was recognized as dictum by the Tax Court. The court also concluded that the taxpayer failed to establish that it had sustained a bad-debt loss of $1,300,000 from its purchase of Class A shares of Supercenter. Taxpayer now seeks review of the Tax Court's order affirming the commissioner's assessment which allowed only a partial net operating loss carryover.

Minn. St. 271.10 defines the review available from a decision of the Tax Court, specifying as grounds for review (1) lack of jurisdiction; (2) that the order was not justified by the evidence or was not in conformity with the law; or (3) that the Tax Court committed some other error of law. This court's scope of review of the Tax Court's resolution of fact issues is limited to determining whether the evidence reasonably sustains such findings by the Tax Court. Red Owl Stores, Inc. v. Commr. of Taxation, 264 Minn. 1, 117 N. W. (2d) 401; Great Northern Investments, Inc. v. Commr. of Taxation, 267 Minn. 447, 127 N. W. (2d) 444; Oliver Iron Min. Co. v. Commr. of Taxation, 247 Minn. 6, 76 N. W. (2d) 107. Specifically, our task is to determine whether there is evidence reasonably sufficient to sustain the finding that the Supercenter stock had value on liquidation. We think the evidence—including the facts that taxpayer, in obtaining the net operating loss carryover deduction, admitted that the value of Supercenter's assets exceeded its liabilities by $333,254.66; that the taxpayer obtained a going business; and that Ralph Harmon was given value for his shares of the stock—is amply sufficient to sustain a finding that the stock was not worthless on liquidation. Thus, the Tax Court could not allow taxpayer to treat the loss of its capital investment as an ordinary loss incurred as a result of securities in an affiliated corporation becoming worthless during the taxable year. Taxpayer, however, argues that the uncontroverted opinion testimony of Fred R. Friswold, a qualified expert in the area of securities evaluation, conclusively proved that the stock was worthless. We cannot

agree inasmuch as evidence, though not directly contradicted, can be disregarded or discounted by the trier of fact where it is inconsistent with facts or circumstances in evidence. Moeller v. St. Paul City Ry. Co. 218 Minn. 353, 16 N. W. (2d) 289; In re Estate of Calich, 214 Minn. 292, 8 N. W. (2d) 337. This is precisely that type of case. The evidence referred to above indirectly contradicted taxpayer's contention and the expert's conclusion that the stock was worthless, and the specialized court clearly could base its finding upon that evidence rather than accept the opinion evidence of taxpayer's expert witness.

Finally, we think the Tax Court's response to taxpayer's alternative argument that it was entitled to a bad-debt deduction is also without error. The money taxpayer spent in acquiring Class A shares in Supercenter cannot be deducted as a bad debt pursuant to Minn. St. 290.09, subd. 6, because the evidence obviously does not compel a finding that any purchase thereof created a debt owed by Supercenter to the taxpayer.

Affirmed.