The COMMISSIONER OF REVENUE,
Respondent,

v.

ASSOCIATED DRY GOODS,
INC., Relator.

No. C6–83–227.

Supreme Court of Minnesota.

March 23, 1984.

Ralph W. Peterson, Daniel T. Blomquist, Minneapolis, for relator.

Hubert H. Humphrey, III, Atty. Gen., Paul R. Kempainen, Sp. Asst. Atty. Gen., Dept. of Rev., St. Paul, for respondent.

SIMONETT, Justice.

The relator taxpayer, with headquarters in New York City, has retailing divisions located throughout the United States, including the Powers Dry Goods Company division in Minnesota. The Tax Court held that the taxpayer was a "unitary" business conducted within and without Minnesota, so that the taxpayer's aggregate income from all its divisions was to be apportioned under the three-factor formula of Minn. Stat. § 290.19 (1982) to determine the Minnesota state income taxes due. We affirm.

In 1916, Associated Dry Goods was incorporated as a Virginia corporation with corporate headquarters in New York City and with eight retail stores, including Powers Dry Goods Company in Minneapolis, as subsidiaries. In subsequent years, more stores were added. In 1951, Associated Dry Goods reorganized, eliminating the subsidiaries and becoming one corporate entity with a number of separate retailing divisions operating in this country. Powers Dry Goods Company is one of the divisions, operating seven stores in Minnesota.

For the tax years February 1, 1967, through January 31, 1976, the taxpayer filed Minnesota state income tax returns, reporting on a separate accounting basis only income from the Powers Dry Goods division. On May 17, 1977, the Commissioner of Revenue assessed additional state income taxes for these years in the aggregate amount of $280,085.06. The assessment was appealed by Associated Dry Goods to the Tax Court, which, on November 2, 1982, affirmed the Commissioner's order, finding that the taxpayer was a "unitary business" for the years in question and that its income was properly apportioned by the three-factor formula of Minn.

Stat. § 290.19, subd. 1(2) (1971 & 1974). This writ of certiorari followed.

The issues on appeal are best phrased as follows: (1) Did the Tax Court err in finding that Associated Dry Goods was a "unitary" business? (2) If Associated Dry Goods was conducting a "unitary" business in this state, could Minnesota base its state income tax on an apportionment of the taxpayer's net income to this state by the three-factor formula? The first issue is basically factual and the second is more a question of law, but both questions implicate the constitutional limitation of due process under the Federal and Minnesota constitutions.

■ If a business is carried on partly within and partly without this state, then Minn.Stat. § 290.19 (1982) provides that the entire income derived from the business shall be considered in determining the business' state income tax under a three-factor apportionment formula. This formula apportions income on the basis of a percentage representing the arithmetic average of the ratios of sales, property, and payroll within Minnesota to the sales, property, and payroll of the business as a whole. *See* Minn.Stat. § 290.19, subd. 1(2)(a) (1976). The Commissioner applied this formula to arrive at his additional assessment.

■ In making an assessment, "a State may not tax value earned outside its borders." *ASARCO Inc. v. Idaho State Tax Commission*, 458 U.S. 307, 102 S.Ct. 3103, 3109, 73 L.Ed.2d 787 (1982). On the other hand, recognizing that it is not always easy to determine what income of a multistate business is earned within a state and what

without, it has long been the law that, if the business is "unitary," an apportionment formula which considers the local business as part of the whole may be used. We have said:

A multistate business is a unitary business when the operations conducted in one state benefit and are in turn benefited by the operations conducted in another state or states. The test to be applied in determining whether a business is a unitary one is based upon the following inquiry: Is the operation of the business within the state "dependent upon or contributory to the operation of the business outside the state"?

*Western Auto Supply v. Commissioner of Taxation*, 245 Minn. 346, 355–56, 71 N.W.2d 797, 804 (1955). This definition appears as well in our statutes.[1] *See also, e.g., Great Lakes Pipe Line Co. v. Commissioner of Taxation*, 272 Minn. 403, 138 N.W.2d 612 (1965); *Maurice L. Rothschild & Co. v. Commissioner of Taxation*, 270 Minn. 245, 133 N.W.2d 524 (1965).

Associated Dry Goods strenuously contends it is not a "unitary" business, at least not insofar as Minnesota is concerned,[2] if the *Western Auto* test is properly applied. Associated Dry Goods has brought this same claim to us before, for the years 1954 through January 1967. On that occasion, we affirmed a Tax Court ruling that the taxpayer was a unitary business without opinion because this court was evenly divided. *See Associated Dry Goods Corp. v. Commissioner of Taxation*, 306 Minn. 532, 235 N.W.2d 821 (1975), *cert. denied*, 425 U.S. 999, 96 S.Ct. 2216, 48 L.Ed.2d 824 (1976). The taxpayer now returns, pointing

---

**1.** Minn.Stat. § 290.17, subd. 2(4) (1982), provides in part:

The term "unitary business" shall mean a number of business activities or operations which are of mutual benefit, dependent upon, or contributory to one another, individually or as a group. Unity shall be presumed whenever there is unity of ownership, operation, and use, evidenced by centralized management or executive force, centralized purchasing, advertising, accounting, or other controlled interaction. Unity of ownership will not be deemed to exist unless the corporation

owns more than 50 percent of the voting stock of the other corporation.

**2.** It appears that Associated Dry Goods files state income tax returns on an apportionment formula basis, rather than by separate accounting, in California, Colorado, Connecticut, Kentucky, Massachusetts (since 1971), Missouri, New York, Pennsylvania, Virginia, West Virginia, and the District of Columbia. Each state's definition and application of the unitary business-apportionment formula may, of course, vary, so long as it is within the parameters of constitutional due process.

out that recently the United States Supreme Court has issued five decisions on the unitary enterprise concept in state taxation of multijurisdictional businesses,[3] and that these decisions clarify the concept favorably to its cause. These decisions are not unhelpful, but the facts of each case are varied and many, and each case—as does ours here—turns largely on its own situation. There are no "bright lines"—but some principles and matters of emphasis do emerge.

■ For a unitary business, there must be "some sharing or exchange of value not capable of precise identification or measurement—beyond the mere flow of funds arising out of a passive investment or a distinct business operation—which renders formula apportionment a reasonable method of taxation." *Container Corporation of America v. Franchise Tax Board,* —— U.S. ——, 103 S.Ct. 2933, 2940, 77 L.Ed.2d 545 (1983). Or put another way, a multistate enterprise may be characterized as a unitary business where there are "contributions to income resulting from functional integration, centralization of management, and economies of scale." *Mobil Oil Corp. v. Commissioner of Taxes of Vermont,* 445 U.S. 425, 438, 100 S.Ct. 1223, 1232, 63 L.Ed.2d 510 (1980).[4] Where these characteristics exist, use of a separate geographic accounting system may fail to account for these contributions to income, and an apportionment formula may then be used.

■ There must be "some bond of ownership or control" uniting the business enterprise. *Container Corp.,* 103 S.Ct. at 2940. Also, "[o]ne must look principally at the underlying activity, not at the form of investment," and it must be remembered that "the form of business organization may have nothing to do with the underlying unity or diversity of business enterprise." *Mobil,* 445 U.S. at 440, 100 S.Ct. at 1233. A unitary business may be either vertically or horizontally structured. *Container Corp.,* 103 S.Ct. at 2941. On the other hand, *ASARCO, Inc. v. Idaho State Tax Commission,* 458 U.S. 307, 102 S.Ct. 3103, 73 L.Ed.2d 787 (1982), and *F.W. Woolworth Co. v. Taxation and Revenue Department,* 458 U.S. 354, 102 S.Ct. 3128, 73 L.Ed.2d 819 (1982), seem to suggest something more is needed than evidence of common ownership, high-level executive oversight and certain centralized nonoperating functions such as accounting, legal and financing services, and something more than just adding to the profit of the parent; rather there must be some "rational relationship" between the outside income attributed to the taxing state and the intrastate values of the enterprise so that the

---

3. In *Mobil Oil Corp. v. Commissioner of Taxes of Vermont,* 445 U.S. 425, 100 S.Ct. 1223, 63 L.Ed.2d 510 (1980), the question was whether Vermont could tax as a unitary business on an apportionment basis, a vertically integrated petroleum business operating in 40 states and several foreign countries. Held, yes. In *Exxon Corp. v. Wisconsin Department of Revenue,* 447 U.S. 207, 100 S.Ct. 2109, 65 L.Ed.2d 66 (1980), the question was whether Wisconsin could apportionately tax a vertically integrated petroleum company with marketing, exploration and production, and refining operations, but with only marketing in Wisconsin. Held, yes. In *ASARCO, Inc. v. Idaho State Tax Commission,* 458 U.S. 307, 102 S.Ct. 3103, 73 L.Ed.2d 787 (1982), the question was whether Idaho, in apportionately taxing a company with multistate mining operations, including a silver mine in Idaho, could include income from dividends, interest, and capital gains from five foreign mining subsidiaries. Held, no. In *F.W. Woolworth Co. v. Taxation and Revenue Department,*

458 U.S. 354, 102 S.Ct. 3128, 73 L.Ed.2d 819 (1982), the question was whether New Mexico could include dividend income from Woolworth's foreign subsidiaries in its apportionment formula. Held, no. Finally, in *Container Corporation of America v. Franchise Tax Board,* —— U.S. ——; 103 S.Ct. 2933, 77 L.Ed.2d 545 (1983), the question was whether California could apply the unitary business principle to a nondomiciliary corporation operating as a vertically integrated paperboard packaging manufacturer in California and elsewhere, so as to include dividend income from overseas subsidiaries. Held, yes.

4. This functional interdependence test seems to have evolved from the old three-unities test of *Butler Brothers v. McColgan,* 17 Cal.2d 664, 111 P.2d 334 (Cal.Ct.App.1941), *affirmed,* 315 U.S. 501, 62 S.Ct. 701, 86 L.Ed. 991 (1942), namely, unity of ownership, unity of operation, and unity of use.

local in-state operation is more than simply a discrete business enterprise. *ASARCO*, 102 S.Ct. at 3114–15; *F. W. Woolworth*, 102 S.Ct. at 3135. In the most recent decision, *Container Corp.*, however, it was held that the taxpayer's assistance to the foreign subsidiaries in the form of equipment and personnel needs, loaning funds and guaranteeing loans, giving substantial technical assistance, and the supervisory role played by the corporate officers in providing general guidelines to the subsidiaries was sufficient to tax the enterprise as a single entity.

Against this background, we examine the facts of our case. Associated Dry Goods operates as a "retail ownership group." Its stores are set up as separate divisions; although they are not corporate subsidiaries, neither are they "chain stores." Each of the divisions, of which Powers is one, operates several retail department stores. Each division, however, is operated independently, catering to different sections of society, carrying different merchandise lines, and using different methods of operation. The diversity extends from the relatively small Powers Dry Goods to the elite Lord and Taylor stores.

Formal control of Associated Dry Goods is in a single board of directors, one set of corporate officers and one set of stockholders. The New York office acts as banker, counsellor, and coordinator of activities of the divisions, but almost all day-to-day control over operations and management is delegated to the division officers. Division presidents, such as for Powers, are given nearly total authority over hiring, firing, merchandising, warehousing, pricing, sales advertising, and store layout for their own divisions. The division president and treasurer are appointed as corporate officers and the division president is given corporate signatory authority, but the appointments are mostly honorary and the signatory authority is rarely exercised. Corporate officers dictate few corporate policies, most of which are advisory only.

The New York corporate officers oversee several aspects of the division operations. Divisions are annually audited internally by the New York officers and externally by Touche & Ross Co., hired out of New York. Semi-annual (seasonal) budgets, including charitable contributions, must be approved by the board of directors. Both state and federal tax returns are prepared in New York. The divisions keep the New York offices informed through a series of daily, weekly, monthly, quarterly, semi-annual and annual reports. These reports are compiled and distributed throughout the divisions to compare the operations of the divisions.

As income is accumulated at a division, it is transferred to New York, where it is commingled with other corporate funds. As a division needs financing to maintain sufficient balances at local banks or to fund capital improvements, the New York office lends funds back to the divisions. All major renovations or the building of new stores must be approved for funding by the board of directors. The corporation uses profits to purchase additional businesses, most of them related to dry goods sales.

The New York office provides some services for all of the divisions. All property and casualty insurance is centrally purchased (health insurance is purchased locally). An employee pension plan is managed in New York, and an executives' stock option program is provided by Associated Dry Goods. In addition, the New York office has a Market Research Division which distributes information and, for a fee, assists divisions in making decisions about purchases. Divisions do very little group purchasing, less than 10% of total purchases, but are free to coordinate purchases with other divisions. The corporate offices also provide consultant services through their in-house counsel, a corporate engineer, an architect, a fixtures and planning officer, an interior decorator and a realty officer. Associated Dry Goods Credit Corporation is a subsidiary of Associated Dry Goods which purchases the accounts receivable from the divisions and lends the parent corporation money to be used for capital

investment. Another wholly-owned subsidiary, Adcor Realty, purchases and leases out realty, often to the divisions. Powers Dry Goods leases three stores from Adcor. Division presidents are also officers of Adcor. Divisions occasionally join together to share services; thus Powers uses the St. Louis Styx Dry Goods division's computers for billing services.

Each division is set up to operate as a separate business. Although on occasion Associated Dry Goods corporate officers would merge or close stores which were unprofitable, most decisions regarding expansion or renovation of stores are made and planned at the division level. All of the Powers Dry Goods stores are in Minnesota. The stores are designed to compete effectively in the local market (as opposed to competing with national chain stores). Powers makes its own purchases, trains its own employees, and owns its fixtures, equipment, and delivery fleet. Powers does its own accounting, has its own local banks and legal counsel, does its own advertising, and receives all of its income from the sales at its stores—*i.e.*, it receives no income from other Associated Dry Goods divisions or subsidiaries.

The Tax Court stated, "In our opinion, a decentralized style of management does not prevent us from finding that Associated is a unitary business for tax purposes," noting that "ultimate authority and control is vested with Associated's shareholders and board of directors." The Tax Court found *Maurice L. Rothschild & Co. v. Commissioner of Taxation*, 270 Minn. 245, 133 N.W.2d 524 (1965), to be analogous. There the taxpayer also was in the retail department store business, operating three stores in Chicago and three in the Twin Cities, each set of stores under a different name, and we affirmed the Tax Court's finding of a unitary business.

Associated Dry Goods argues that the Tax Court misapplied the unitary business test. Quoting *Mobil Oil's* admonition that it is the underlying realities of the business, not superficial form, that counts, relator argues that the Tax Court looked only at "unity of ownership," the single corporate structure, and not at how the business was actually functioning.[5] It argues that the "stewardship activities" of the New York corporate offices, which are concerned with the problems and prerogatives of ownership, must be distinguished from the "operating functions" of Powers, and that the unitary business test focuses on the latter.

In particular, appellant relies on *F.W. Woolworth v. Taxation and Revenue Department of New Mexico*, 458 U.S. 307, 102 S.Ct. 3128, 73 L.Ed.2d 819 (1982). It points out this is the first United States Supreme Court decision applying the unitary business principle to a taxpayer engaged solely in a retailing business—at least the first case since *Butler Brothers v. McColgan*, 315 U.S. 501, 62 S.Ct. 701, 86 L.Ed. 991 (1942). In *Woolworth*, the Supreme Court held that New Mexico could not apply the unitary business test to the dividend income of four of Woolworth's foreign subsidiaries, which were engaged in chain store retailing in foreign countries. The Court said it was not enough that the parent derives income, which is a business advantage, from its subsidiaries, or that the relationship between the parent and the subsidiaries has potential for business advantage, but that the test goes to the actual underlying, functional realities of the business. The Court concluded that except for the kind of occasional oversight any parent gives a subsidiary—*e.g.*, with respect to capital structure, major debt and dividends—there was little or no integration of the business activities or centralization of management.

Nevertheless, while our case has similarities to *Woolworth*, there are also differ-

5. In its memorandum the Tax Court took the view that *F.W. Woolworth* and *ASARCO* were essentially irrelevant because they dealt with state taxation of dividend income from foreign subsidiaries. The reasoning of these cases is, however, pertinent because it is the underlying realities of the business activities that are involved in the "unitary" business test, not the form of the income.

ences. Indeed, we think the facts of this case are much closer to *Container Corp.*[6] Here, there is evidence of centralization of management: there is one set of stockholders, officers and directors who perform the kind of executive oversight that goes beyond "potential" to some degree of "implicit" control. *Container Corp.*, 103 S.Ct. at 2946–47 n. 16. There is also evidence of functional integration: for example, the sharing of information, some group buying, periodic reports and conferences, preparation of tax returns at the corporate level, centralized purchasing of casualty insurance, one pension plan, and various consultant services. Finally, there is evidence of economies of scale: funds are commingled and used to fund capital improvements and for loans back to the divisions; accounts receivable are purchased from the division by a New York subsidiary.

■■■ The Tax Court's findings are to be sustained if reasonably supported by the evidence. *Super Valu Stores, Inc. v. Commissioner of Taxation*, 291 Minn. 169, 175, 190 N.W.2d 67, 70 (1971). A decision of the Tax Court will not be disturbed if it has any reasonable basis in the law. *Red Owl Stores, Inc. v. Commissioner of Taxation*, 264 Minn. 1, 5, 117 N.W.2d 401, 405 (1962). We hold that the Tax Court's determination that Associated Dry Goods' activities in Minnesota are sufficient to qualify as a "unitary" business is reasonably supported by the evidence and has a reasonable basis in the law.

■■■ Finally, we need to address the taxpayer's assertion that "where income can, in fact, be fully and accurately accounted for on a separate basis, apportionment is constitutionally impermissible and income *must* be reported on a separate accounting basis." (Relator's Brief at 15) (relator's emphasis). We disagree.

In prior cases we have rejected the argument that where separate accounting can be used, it must be used. *See Maurice L. Rothschild & Co.*, 270 Minn. at 255–56, 133 N.W.2d at 531; *Walgreen Co.*, 258 Minn. at

530, 104 N.W.2d at 719–20. Neither does the United States Supreme Court require a state to use any one formula. *Container Corp.*, 103 S.Ct. at 2939. Indeed, that Court has noted that geographical accounting "is subject to manipulation and imprecision, and often ignores or captures inadequately the many subtle and largely unquantifiable transfers of value that take place among the components of a single enterprise." *Id.* at 2940.

The Tax Court found that it was feasible for the taxpayer, using generally accepted accounting principles, to account for the operations of the Powers division as a separate profit center. A distinction must be made, however, between internal accounting for the purpose of measuring a division's performance and an accounting for the purpose of state taxation. The two are not the same. Thus relator's phrasing of the issue—whether a division's income must be reported on a separate basis when, in fact, that income can be "fully and accurately accounted for" on a separate basis— begs the question. It is precisely because the taxpayer's activities are unitary that the income or values derived from various parts of those activities cannot be fully and accurately accounted for on a separate accounting basis and that an apportionment formula consequently may be used.

The issue here is not whether the state's application of its three-factor apportionment formula has, in fact, produced an arbitrary or unfair tax burden in this case; that issue has not been raised. The Tax Court having found that Associated Dry Goods was a unitary business, it follows that the state was free to use, as it did choose to do, its three-factor apportionment formula rather than separate division accounting for tax purposes.

Affirmed.

---

6. In *Container Corp.*, the Supreme Court indicated it had reversed in *F.W. Woolworth* because the state court had made legal errors not only in the conclusions it drew but in the legal standard it applied to the facts of that case. *Container Corp.*, 103 S.Ct. at 2946 n. 15.