■ In the Matter of CAMPBELL SALES COMPANY, Petitioner, v NEW YORK STATE TAX COMMISSION, Respondent. — Harvey, J. Proceeding pursuant to CPLR article 78 (transferred to this court by order of the Supreme Court at Special Term, entered in Albany County) to review a determination of respondent which sustained a franchise tax assessment imposed under Tax Law article 9-A.

Petitioner is a New Jersey corporation authorized to do business in New York. It is a wholly owned subsidiary of Campbell Soup Company (Campbell Soup), which is also a New Jersey corporation. Campbell Soup is not a New York taxpayer because it does not do business in New York or engage in any activity in New York which would require the filing of a franchise tax return.

Since 1941, pursuant to an agreement with the Department of Taxation and Finance, petitioner has calculated its New York franchise tax pursuant to a modified formula. That formula properly and adequately established the net income of petitioner generated by its activities in New York. For petitioner's report for fiscal year 1977, the Department chose not to honor its past agreement and required a combined return of petitioner with its parent corporation. Petitioner had reported and paid its calculated tax of $199,772. The Department determined under Tax Law § 211 (5) that an additional $540,000 was due. Had the statutory formula of Tax Law § 210 been used in computing the tax, petitioner would have been liable for the payment of $9,463.

Petitioner filed for redetermination of the claimed deficiency and for a refund of the amount of money it paid over and above that required by the statutory formula. The primary issue considered at the hearing was whether the Department properly required petitioner to file a franchise tax report on a combined basis with its parent corporation and seven other of Campbell Soup's subsidiaries.

Respondent's findings of fact included, *inter alia,* the following. Petitioner maintains 40 offices in 34 States, including two offices in New York. Campbell Soup is a manufacturer and

processor of food and food products. Petitioner has been engaged in the business of acting as a sales representative or broker in the food business, soliciting orders for the products of Campbell Soup and its affiliates. The orders are transmitted to Campbell Soup's office in Camden, New Jersey, for acceptance and credit approval. The goods are then shipped directly from one of Campbell Soup's plants to the wholesaler or distributor, and payment therefor is made directly to Campbell Soup. During the year under consideration, petitioner had approximately 1,000 employees who worked exclusively for petitioner. In Alaska and Hawaii, petitioner retained food brokers to solicit orders for Campbell Soup's products. Petitioner also utilized brokers from time to time to solicit orders for new products. Petitioner pays its own expenses, most of which are to unrelated third parties. Petitioner's president, who works full time for petitioner, holds the office of vice-president in Campbell Soup. Petitioner maintains its own books of account and bank accounts. Certain of petitioner's administrative functions, including the accounting and legal functions, are performed for it by Campbell Soup. Petitioner is compensated by Campbell Soup on a cost-plus basis which, for New York in the taxable year, amounted to a commission of 2.74% of sales. The commission paid to petitioner by Campbell Soup is a fair and reasonable commission; if anything, the amount may have been more than would be paid for such work on an arm's length basis involving unrelated parties.

The Department allocated $6,218,807 as combined business income generated by petitioner in New York during the taxable year. This is in contrast to petitioner's total net income of $732,915, as reported in its Federal income tax return. The statement of audit and adjustment does not set forth the factors which were considered in arriving at the business allocation percentage which was applied. Neither does the decision make any explanation as to the manner in which the deficiency was computed.

The imposition of a franchise tax is "[f]or the privilege of exercising its corporate franchise, or of doing business * * * in this state in a corporate or organized capacity" (Tax Law § 209 [1]). The requirement is that corporations subject to the tax "shall annually pay a franchise tax, upon the basis of [their] entire net income" (Tax Law § 209 [1]). Entire net income is defined by Tax Law § 208 (9) as a corporation's total net income from all sources and "presumably the same as the entire taxable income which the taxpayer is required to report to the United States treasury department". If respondent were to determine that the reported net income computed in accordance with the

statutory formula did not properly reflect the tax liability under the statute, it could resort to corrective adjustment of individual items by reallocation of income and deductions pursuant to Tax Law § 211 (5). If that remedy were inappropriate, respondent is authorized to require a combined report. However, to have done so, respondent must have determined that such a report was necessary in order to properly reflect the tax liability under the statute (Tax Law § 211 [4]).

The actual net income of petitioner allocable to all its operations, as reported by petitioner in its Federal income tax return for the year in question, was $732,915. In its New York franchise tax return, petitioner reported its net income as $1,706,434. This was imputed from its willingness to report 4% of gross sales as reasonable net income for its services. There was no evidence of any nature to support the contention of the Department that the calculation of tax based upon the declared net income would improperly reflect petitioner's tax liability. On the contrary, there is no finding of fact contained within the decision which would explain and warrant the imposition of the additional tax. To accept the Department's conclusion would attribute to petitioner 36.14% of the total combined income of Campbell Soup and its subsidiaries.

Not only was there no basis in the record to substantiate that conclusion, logic and reason would dictate a contrary result. The activities carried on by petitioner throughout New York and other States were as a sales representative or broker. Petitioner contends, without contradiction, that food brokers serve their customers at low percentage commissions of sales. We must assume that selling to wholesalers, distributors or supermarket chains involves such large volumes as to permit a profitable operation remunerated at a relatively small percentage of sales.

Consequently, it is apparent that even if respondent was justified in requiring a combined report, there was no substantial evidence nor rational basis for the assessment of deficiency. It is our further view that there were no facts or circumstances requiring a combined report. Respondent relied upon a very narrow interpretation of the decision of the Court of Appeals in *Matter of Wurlitzer Co. v State Tax Commn.* (35 NY2d 100). Respondent interpreted *Wurlitzer* as granting it authority to require a combined report whenever it found a unitary business relationship to exist and without any further qualifications or restrictions. This interpretation is unjustified. The description of the statute as being unitary is that of respondent and not of the Legislature. To adopt respondent's reasoning would require a combined report in every instance in which a unitary relationship existed. Were that so, the Legislature would have stated it

without ambiguity and not left it to the determination of respondent as to whether a combined report was required. The facts of *Wurlitzer* are so different as to preclude respondent from any meaningful guidance in its determination of this case.

The purpose of the combined reporting provision of the franchise tax statute contained in Tax Law § 211 (4) is to avoid distortion of, and more realistically portray true income of, closely related businesses (*Matter of Coleco Indus. v State Tax Commn.*, 92 AD2d 1008, *affd* 59 NY2d 994). No single factor is decisive in properly reaching a determination that requiring combined reporting fulfills the statutory purpose (*supra,* p 1009).

It is obvious that respondent, by its determination, is endeavoring to tax the business activities of Campbell Soup in addition to the activities of petitioner. "As a general principle, a State may not tax value earned outside its borders * * * The broad inquiry in a case such as this, therefore, is 'whether the taxing power exerted by the state bears fiscal relation to protection, opportunities and benefits given by the state. The simple but controlling question is whether the state has given anything for which it can ask return'" (*Asarco, Inc. v Idaho State Tax Commn.*, 458 US 307, 315).

The due process clause of the 14th Amendment requires that there be "a rational relationship between the income attributed to the State and the intrastate values of the enterprise" (*Mobil Oil Corp. v Commissioner of Taxes,* 445 US 425, 437). "[T]he factor or factors used in the apportionment formula must actually reflect a reasonable sense of how income is generated" (*Container Corp. v Franchise Tax Bd.,* 463 US 159, 169). Where a taxpayer can prove by clear and cogent evidence that the income attributed to a State is in fact out of all appropriate proportions to the business transacted in that State, the taxing authority's determination will not be permitted to stand (445 US, at p 437). Petitioner has met that burden here, while the formula used by respondent to determine petitioner's franchise tax liability under the combined reporting method is unsupported by substantial evidence in the record.

It is our conclusion that petitioner fully reported its net income on its franchise tax return and that there was no reasonable basis for the requirement that petitioner and its parent corporation file a combined return. Respondent, pursuant to Tax Law § 211 (5), had the authority to adjust the reported net income when, in its judgment, it determined that an agreement between two corporations created an improper loss of net income. It is readily apparent that respondent has for more than

20 years concluded that the agreement between petitioner and Campbell Soup has not truly reflected petitioner's net income. The instant franchise tax return computes net income at 4% of sales. That is in excess of the amount actually received by petitioner and in excess of the reasonable rate of commissions established by the evidence herein. There is no evidence in the record supporting the view that any sales broker dealing at arm's length with a food processor could negotiate a contract entitling it to net income of more than 4% of sales. Consequently, the assessment of deficiency must be annulled. On the other hand, petitioner's request for a refund of the amount it paid in excess of the statutory formula must be denied. Of its own volition, petitioner has reported what it has asserted to be its true net income and has thereby admitted that its contract with Campbell Soup does not truly represent the value to Campbell Soup of the services rendered by petitioner.

Determination annulled, with costs, and matter remitted to respondent for further proceedings not inconsistent herewith. Main, Mikoll and Harvey, JJ., concur; Kane, J. P., and Yesawich, Jr., J., dissent and vote to confirm in the following memorandum by Yesawich, Jr., J.

Yesawich, Jr., J. (dissenting). We respectfully dissent. At issue is whether there is substantial evidence in the record to justify respondent's determination that a combined report is necessary to correctly portray petitioner's tax liability under Tax Law article 9-A.

Tax Law article 9-A proposes taxing foreign corporations doing business in New York on the basis of the business they generate in the State (Tax Law § 209 [1]; *Matter of Wurlitzer Co. v State Tax Commn.*, 35 NY2d 100, 105). To properly reflect that tax liability, Tax Law § 211 (4) authorizes respondent to require a foreign corporation to file a return combined with its parent if (1) the parent owns or controls substantially all of the capital stock of the taxpayer subsidiary, and (2) there are either substantial intercorporate transactions or some agreement which distorts income (*see also,* 20 NYCRR 6-2.5 [a]; *Matter of Wurlitzer Co. v State Tax Commn., supra; Matter of Coleco Indus. v State Tax Commn.,* 92 AD2d 1008, 1009, *affd* 59 NY2d 994).

Since petitioner is a wholly owned subsidiary of Campbell Soup, this appeal necessarily focuses on whether respondent acted rationally (*see, Matter of Howard v Wyman,* 28 NY2d 434, 438; *Matter of Del-Met Corp. v State Tax Commn.,* 102 AD2d 312, 313) when it concluded that petitioner and Campbell Soup engaged in intercompany transactions of substance, making proper reflection of their New York franchise tax liability impossible without a combined report. Significantly, respondent in

appurtenant regulations, the validity of which is not challenged, has declared that in determining if there are material intercorporate transactions among corporations, activities such as the performance of services by the taxpayer for the other corporation and the selling of goods acquired from the other corporation are to be considered (20 NYCRR 6-2.3 [c] [1], [2]). That regulation provides further that "[t]he substantial intercorporate transaction requirement may be met where as little as 50 percent of a corporation's receipts or expenses are from one or more" of such activities (20 NYCRR 6-2.3 [c]). To the exclusion of all else and since its inception, petitioner's complete and undivided attention has apparently been directed at soliciting sales for Campbell Soup in 34 States for over 60 years; that a substantial intercorporate relationship existed here is thus obvious.

The interassociation of these corporations is also manifested by the following undisputed facts: while petitioner sells Campbell Soup's products, Campbell Soup handles the advertising and marketing; after consummation of sales, petitioner continues to field and attempt to resolve customer complaints; employees of Campbell Soup will, on occasion, accompany those of petitioner to gather information for promotional materials and to ascertain the success of particular products; and the joint service of petitioner's president as vice-president of Campbell Soup.

Petitioner's contention that it is an independent enterprise is further undermined by (1) the private agreement with Campbell Soup which ensures that petitioner's income will equal its costs plus 4% and (2) petitioner's 1941 tax liability agreement with the State. The former agreement guarantees petitioner a profit regardless of cost fluctuations and actually results in increasing its income as its costs increase. This arrangement suggests that petitioner has a rather intimate involvement in the over-all machinery of Cambell Soup's conglomerate. As for the tax liability agreement, it is so constructed that petitioner's gross income is arrived at only by allocating a portion of Campbell Soup's income to petitioner, and it even provides for readjustment of petitioner's income in the event that Campbell Soup's advertising expense falls below a certain amount. In short, by that agreement, the amount of income reported by petitioner is a product of Campbell Soup's income. Moreover, by reason of the tax liability agreement with the State, petitioner has since 1941 voluntarily paid New York franchise taxes conspicuously greater in amount than those due under the statutory formula (*e.g.,* in 1977, $199,772 of tax paid under the agreement instead

of $9,463 under the statutory formula), thereby implicitly acknowledging that its franchise tax liability is distorted if the New York income of the unitary business of which petitioner is a part is not considered. It is also worth noting that, absent such an agreement, unitary business income concededly derived by petitioner and Campbell Soup from New York would escape taxation. In our judgment, the foregoing evidence more than amply justifies respondent's decision to require a combined report.

With respect to the propriety of respondent's audit formula, the 1941 agreement, which neither party has a copy of, seemingly presupposes that 4% of Campbell Soup's sales revenue originated in New York. It is unchallenged that during the years 1974 through 1977, the sales of Campbell Soup within New York accounted for an average of 7.7% of its total sales; furthermore, during that time, the proportion of petitioner's total operating expenses to those incurred in New York, the multiplier for computing its New York source income under the 1941 tax liability agreement, averaged 9.46%. Consistent with these increases, for 1977, the year in question, the New York income of the unitary business is made up of the imputed New York income of Campbell Soup, 5.57% of its total sales revenue, and the actual income of petitioner, 2.51% of Campbell Soup's revenues. Inasmuch as petitioner has not maintained its burden of showing that the disputed allocation does not properly reflect the business transacted in New York, we would confirm respondent's determination.