STATE OF MAINE

KENNEBEC, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-04-91
DHM - KEN - 9/27/2007

GANNETT SATELLITE
INFORMATION NETWORK,

    Petitioner

v.

STATE TAX ASSESSOR,

    Respondent

DECISION AND ORDER

DONALD ... ALBRECHT
LAW LIBRARY

JAN 24 2008

This matter is before the court on cross-motions for summary judgment between petitioner and respondent pursuant to M.R. Civ. P. 56.

Gannett Satellite Information Network, Inc. ("Gannett") petitions this court for review of a November 10, 2004 decision on reconsideration by the State Tax Assessor ("Assessor"), brought pursuant to 36 M.R.S.A. § 151, 5 M.R.S.A. § 11002, and M.R. Civ. P. 80C.

Gannett requested of the Assessor reconsideration of its assessment dated November 24, 2003. Two issues were presented to the Assessor, however, only the second matter is the subject of this petition. Gannett presented a claim for a refund of Corporate Income Tax for Tax Year 2000 in the amount of $718,729.00, which the Assessor denied.

The reconsideration decision found that Gannett files on a unitary business basis with its parent corporation Gannett Co. (included as a petitioner). Gannett acquired Multimedia, Inc. in December 1995, a communications business with various cable franchises in Kansas, North Carolina, and Oklahoma. On January 31, 2000, Gannett sold Multimedia Cable assets, recognizing a large gain. Gannett contends that the gain

on the sale of the cable assets should be excluded from Maine apportionable income under 36 M.R.S.A. § 5211(17).[1] Section 5211(17) allows either the taxpayer or the Assessor to deviate from the regular apportionment provisions when it is shown that these provisions "do not fairly represent the extent of the taxpayer's business activity in [Maine].

In 1995, Gannett sought to purchase newspaper and broadcast television businesses owned by Multimedia. When Multimedia refused to sell those businesses without also including its cable television systems, security alarm, and entertainment production businesses, Gannett agreed to purchase all of Multimedia. Gannett sold the entertainment and security alarm businesses fairly soon after the acquisition, but for (allegedly) tax and other reasons Gannett did not sell the cable televisions systems ("Cable") immediately.

Pursuant to 36 M.R.S.A. § 151, the Superior Court conducts a *de novo* hearing and makes a *de novo* determination of the merits of the case. The Superior Court must make its own determination as to all questions of fact or law and enter such orders and decrees as the case may require.

Gannett has the burden of proving that no unitary relationship existed and that Maine may not tax an apportioned share of the income from the sale of Multimedia cable assets.[2] To prevail on its constitutional challenge, Gannett must prove by "clear

---

[1] "If the apportionment provisions of this section do not fairly represent the extent of the taxpayer's business activity in this State, the taxpayer may petition for, or the tax assessor may require, in respect to all or any part of the taxpayer's business activity, if reasonable:
A. Separate accounting;
B. The exclusion of any one or more of the factors;
C. The inclusion of one or more additional factors which will fairly represent the taxpayer's business activity in this State; or
D. The employment of any other method to effectuate an equitable apportionment of the taxpayer's income."

[2] The apportionment formula "provides a method for attributing to a state, for the purpose of income taxation, a portion of the total income of a multi-state or multi-national business that is carrying on some

and cogent evidence" that the out-of-state activities producing the income sought to be excluded were not reasonably related to the unitary business's activities,[3] or that the income is "out of all appropriate proportion to the business transacted by the [taxpayer] in that State" or led to a grossly distorted result.[4]

A "unitary business" is defined statutorily to mean "a business activity which is characterized by unity of ownership, functional integration, centralization of management, and economies of scale." 36 M.R.S.A. § 5102(10-A) (1990). The unitary business concept ignores the separate legal existence of corporate entities and focuses on such practical business realities as transfers of value among affiliated corporations. *Allied-Signal*, 504 U.S. at 783; *Container*, 463 U.S. at 164-65. A single corporation may theoretically comprise more than one unitary business if two distinct lines of business are in a single corporate entity. The Supreme Court has identified a number of criteria to evaluate whether a State may treat a multi-state business as a unitary business consistent with the Due Process[5] and Commerce Clauses.[6] In *Container*, 463 U.S. at 178-79, the Supreme Court held that

> The prerequisite to a constitutionally acceptable finding of unitary business is a flow of *value*, not a flow of goods . . . a relevant question in the unitary business inquiry is whether contributions to income [of the

of its regular activity within the state." *Albany Int'l Corp. v. Halperin*, 388 A.2d 902, 905 (Me. 1978). The factors in the apportionment formula (sales, property, and payroll) are considered to accurately reflect that portion of the unitary business' income that is attributable to a particular state.

[3] *Allied-Signal, Inc. v. Dir., Division of Tax'n*, 504 U.S. 768, 782-83 (1992); *Exxon Corp. v. Wisconsin Dep't of Rev.*, 447 U.S. 207, 221, 223-24 (1980).

[4] *Container Corp. of Am. V. Franchise Tax bd.*, 463 U.S. 159, 170 (1983).

[5] The Due Process Clause imposes 2 requirements on State taxation of income earned in interstate commerce: (1) a minimal connection (nexus) between the interstate activities and the taxing State, and (2) a "rational relationship between the income attributed to the State and the intrastate values of that enterprise." *Exxon*, 447 U.S. at 219-20; *Mobil Oil Corp. V. Commissioner of Taxes*, 445 U.S. 425, 436-37 (1980).

[6] The Commerce Clause imposes 4 requirements on a State's taxation of interstate activities: (1) the activity must have a substantial nexus with the taxing state; (2) the tax must not discriminate against interstate commerce; (3) the tax must be fairly apportioned, in terms of both internal and external consistency; and (4) the tax must be rationally related to the services provided by the State. *Exxon*, 447 U.S. at 227-28; *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 279 (1977).

subsidiaries] resulted from functional integration, centralization of management, and economies of scale.

The Supreme Court test is not a bright-line test. Rather, the issue of whether a business is "unitary" is determined on a case-by-case basis, after examining all the relevant facts and circumstances.[7] The Maine statutory formulation of a unitary business mirrors the U.S. Supreme Court's formulation. Maine Revenue Services' Rule 801 sets out some circumstances when affiliated corporations are unitary. Rule 801.02 states in part:

> The activities of a corporation or group of affiliated corporations constitute a unitary business if those activities are integrated with, dependent upon and contributive to each other and to the operations of the corporation or group as a whole. The presence of any of the following factors creates a strong presumption that the activities of the corporation or group constitute a single trade or business:
>
> A.  All activities are in the same general line or type of business; [or]
> C.  The corporation or group is characterized by strong centralized management, including but not limited to centralized departments for such functions as financing, purchasing, advertising, and research

As long as income derives from a unitary business, part of which is conducted in Maine, then Maine may tax a portion of *all* the income of the entire unitary business. By contrast, in order to exclude certain income from the apportionment formula, a taxpayer has the burden of proving that the income was earned in the course of activities unrelated to the activities of the unitary business. A court may exclude the income only if the taxpayer proves that it was derived from an "unrelated business activity" that "constitutes a discrete business enterprise." *Exxon*, 447 U.S. at 223; *International Pape Co. v. State Tax Assessor*, 1996 Me. Super. LEXIS 321, at *4, Doc. No. CV-91-58 (Ken. Cty. Sup. Ct., Sept. 30, 1996) (Alexander, J.).

---

[7] It is not necessary that *all* the hallmarks of a unitary business be present in any given case in order to find that a group of affiliated corporations comprise a unitary business. *Container*, 463 U.S. at 166.

Because the test for a unitary business is a fact based, case-by-case determination, the arguments at this point are largely matters of competing interpretations of the facts.

Gannett asserts that it was initially reluctant to acquire Cable because it was an industry in which it had no expertise. However, Gannett felt that Cable was so effectively managed that it could operate under its current management and Gannett could simply retain it as an investment until it could sell it. Gannett asserts that it had no intention of integrating Cable into its existing business or managing Cable as part of its existing operations. Gannett asserts that it had no plan or strategy to become a player in the cable industry and did not hire anyone with cable expertise to manage Cable or change any of Cable's business plans. Gannett argues that it merely wished to maintain the value of Cable for eventual sale by preserving Cable's ability to operate as an independent cable system.[8] The connections that existed between Cable and Gannett were, it argues, too minor and too few to make Gannett and Cable one unitary business. As a result, Gannett argues that none of the three indicia used to determine whether a unitary business exists (functional integration, centralization of management, and economies of scale) is present between Cable and Gannett.

Gannett's second argument in favor of its right to a refund of corporate taxes for the tax year 2000 is that applying Maine's statutory apportionment formula to include the Cable sale gains in the Maine tax base violates Maine law and results in unconstitutional distortion.[9] Gannett argues that the Cable sale gains had nothing to do with Gannett's Maine activities and including the gain in the income attributed to

---

[8] Gannett struck an agreement to sell Cable to Cox Communications, Inc. in mid-1999 (three and a half years after acquisition) and the deal closed in early 2000.
[9] Gannett notes that this claim is independent of the unitary business claims and is a separate and distinct basis for relief.

Maine results in a disproportionate tax base in relation to Gannett's actual Maine activities.[10]

Gannett argues that gross distortion results from the inclusion of the gains in apportionable income both because the degree of distortion is unacceptable and because there is no rational relationship between the income apportioned to Maine under the Assessor's approach and the business conducted in Maine. Gannett notes that in this case, the tax it paid in 2000 was 248% of the tax it would have paid under the separate accounting method proposed by Gannett and more than double Gannett's Maine tax liability for any previous year. Gannett says simply that its activities in Maine from one year to the next remained relatively constant and do not provide any basis for this increased tax burden.

Secondly, Gannett complains that the Cable gains were greatly disproportionate to Cable's contributions to the operating results of Gannett, meaning that the standard apportionment factors of the unitary business (property, payroll, sales) do not fairly represent how the gains were generated and cannot be used as a basis for apportioning the gains. Gannett notes that much of the gains it realized came from market and economic factors unrelated to the business it conducted in Maine, as well as arising prior to its ownership of Cable (built-in gain due to the very low tax basis it assumed when it acquired Cable). As a result, Gannett argues that it is entitled to deviate from the statutory apportionment formula because it does not fairly represent the extent of the taxpayer's business activity in Maine. 36 M.R.S.A. § 5211(17) (see footnote 1).

The Assessor argues that Gannett, by its own admission, operated a horizontally integrated,[11] unitary business that was involved in Maine and most other states in

---

[10] Gannett sold the Multimedia Cable assets to Cox Communications, Inc. for $2.75 billion, realizing a tax gain of $2.54 billion. (Multimedia's cost basis in the assets was only about $208 million).

interrelated news and information activities, including (1) publishing 80 or so daily newspapers and the national newspaper USA Today, (2) owning and operating roughly 20 broadcast TV stations, and (3) owning and operating cable TV systems that did business through roughly 10 or so Gannett- affiliated corporations.[12] In fact, the Assessor notes that Gannett described itself and its affiliates in its 1998 Annual Report as "a diversified news and information company that publishes newspapers, operates broadcasting stations and cable television systems, and is engaged in marketing, commercial printing, a newswire service, data services, and news programming."

The Assessor presents a litany of facts to bolster its argument that Cable was a unitary business with Gannett. The Assessor notes that, among other facts, Gannett reported Cable as one of its four business segments; Gannett attempted to buy additional cable companies (and reported in its 1997 Annual Report that it "look[ed] forward to adding to or expanding our role in cable through acquisitions or business combinations that make sense"); touted its cable operations in its 1998 Annual Report as one of its three core businesses; treated income from Cable on its financial statements and tax returns as operational income, not as investment income; and filed as a unitary business in Maine on its tax returns.

The Assessor argues that Gannett Co.'s tax group realized the sale of Multimedia Cablevision was going to result in an enormous gain and it convinced management to merge 10 different Gannett corporations into Multimedia Cablevision. The result was that Cable, when it was sold, was itself a unitary corporation now consisting of cable, newspaper, and broadcast TV operations. By doing this, Gannett reduced the

---

[11] A horizontally integrated business is one whose segments operate related activities in several states. Gannett Co. described itself as a horizontally integrated business that included Multimedia Cablevision in its 1999 and 2000 Illinois tax returns.

[12] By 1998, Gannett Co. had consolidated its cable television systems into a single corporation, Multimedia Cablevision, Inc., that operated in 3 states-Kansas, North Carolina, and Oklahoma.

apportionment factor for Cable so that only a small fraction of the income from the sale of the cable assets would be apportioned to the states in which the cable business operated (Kansas, North Carolina, Oklahoma). Prior to the merger, roughly 60% of the property, payroll, and sales of Cable were located in Kansas, 25% in Oklahoma, and 15% in North Carolina. Under basic apportionment rules, roughly 3/5 of Cable's income would be apportioned to Kansas and subject to Kansas tax. When Cable was sold, of the $2.54 billion in income from the sale, 3/5 of that amount would be subject to Kansas tax. But after merging the other newspaper and TV corporations into Cable, the apportionment factors would be severely reduced by the addition of these operations. The Assessor argues that if Gannett's cable operations were in fact a discrete business apart from newspaper and broadcast TV, then multimedia should have allocated the $2.54 billion gain to those three states. Instead, Cable treated its broadcasting, newspaper, and cable operations as a unitary business when filing in those states but now claims here (and in other states) that it was not really unitary with the newspaper and broadcast TV operations.

The Assessor also disputes Gannett's argument that taxing the income from the Cable sale results in gross distortion. The Assessor notes that it knows of no state appellate court that has accepted the argument of constitutional distortion when a State uses combined reporting, as Maine does. Nevertheless, the Assessor notes that application of the regular apportionment formula in 2000 results in Maine taxing about 1/3 of 1% (about 0.35%) of the income from Gannett's unitary business. That is a smaller Maine apportionment factor than in 1999 (about 0.41%) and about the same as in 1998 (0.344%). Using this approach, Gannett cannot show any constitutional distortion. The Assessor argues that Gannett must establish that the regular

apportionment formula does not adequately reflect *business activity*, in Maine, not merely that it does not adequately reflect *income* earned in the State.

The Assessor also disputes Gannett's contention that Maine should not be taxing all of the income from the Cable sale because a portion of that income resulted from a so-called "built-in gain." This built-in gain resulted from the fact that when Gannett bought Multimedia, it did so by buying the stock of the company and as a result "carried over" Multimedia's cost basis in the cable assets. Gannett assigned a $1.1 billion dollar value to the assets at that time. As a result, Gannett argues that there was already an almost $1 billion dollar gain at the time of acquisition and that it would be unfair for Maine to tax that portion of the gain because it did not result from any business activities in Maine. In addition, the Assessor notes that Cable's inclusion in Gannett's unitary business was directly responsible for a large part of Cable's increase in value from 1995 to 2000 and the economic factors responsible for part of the increase in value occurred while Gannett owned and used these assets in its unitary business.

The Assessor has moved to exclude the testimony of Lawrence Bennigson proffered by petitioner in support of the motion for summary judgment as an expert to offer his opinions on (1) whether Gannett's cable operations were integrated with the rest of its operations; (2) whether there was centralized management of Cable by Gannett; and, (3) whether there were economies of scale resulting from the centralized services provided by Gannett and its cash management system. The Assessor challenges the qualifications of the witness. The court is satisfied that the expert is qualified, testimony is helpful in an area of expertise, and the arguments by the Assessor would go to the weight of the testimony. The Assessor's motion is denied.

Gannett further complains about the filings of the Assessor in support of its motion for summary judgment opposing the petitioner's statement of material facts.

The nature of this case is so heavily fact-driven that the various statements of material by both parties lacked the simplicity necessary to assist the court. Nevertheless, the court takes no action in this regard because striking any portion of the statements is not consistent with the rules.

In regard to Rule 802-02 of the Maine Revenue Service the court finds weak evidence that the cable activities were integrated with the communications and media businesses and is not satisfied that cable was dependent upon the remaining corporate activities. While it could be said that cable, in some limited respects, is in the same business as newspapers, radio and television, there does not appear to be strong centralized management. While there is evidence that some financing took place for the cable company by the petitioner, the evidence is meager that purchasing, advertising and research were an integrated activity.

The Assessor appropriately notes the filing of the petitioner in other jurisdictions including an annual report showing the cable as operational income. The Assessor further emphasizes that Gannett files as a unitary business in Maine on its tax returns. Such factors may relate to the credibility of the petitioner's position but the court is responsible for applying the law of Maine and considering the extent of Gannett's business activity in the State of Maine.

The Assessor argues that a substantial increase in the value of the cable company occurred because it was a part of an integrated unitary business with Gannett but presents no evidence of such a conclusion regarding the substance of Gannett's activities providing that increase in value. The court finds the argument of Gannett more reasonable that a substantial part of the value results from the so-called "built in gain" and the carry-over of that basis.

Most importantly, the court does not find that there exists a rational relationship between the income attributed to the State of Maine and the intrastate values of Gannett Satellite Information Network, Inc. et al. in their Maine activities consisting of the operation of two television stations and the sale of national newspapers. While the minimal connection between the intrastate activities of the petitioner and the State of Maine meets the requirements of due process, the absence of the rational relationship is fatal to the Assessor's case.

The entry will be:

> Motion for summary judgment of Gannett Satellite Information Network, Inc., et al. is GRANTED; judgment for Gannett Satellite Information Network, Inc. on its petition for judicial review; decision on reconsideration of the State Tax Assessor in the matter of corporate income tax for the tax year 2000 is REVERSED.

Dated: September 27, 2007

Donald H. Marden
Justice, Superior Court

Date Filed __12/9/04__   ____Kennebec____   Docket No. __AP04-91__
                          County

Action ____Petition for Review____
                  80C

J. MARDEN

____Gannett Satellite Information Network,__ VS· ____State Tax Assessor____
                                       Inc.

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| Daniel Snow, Esq. | |
| _ Sarah H. Beard, Esq. | Michael Miller, AAG |
| James G. Good, Esq. | 6 State House Station |
| One Monument Square | Augusta, Maine  04333-0006 |
| Portland, Maine  04101 | Thomas A. Knowlton, AAG |
| | |
| - Scott Smith Esq | |
| ~~1501 M. Street N.W.~~ 1101 Connecticut Ave, NW | |
| ~~Suite 1175~~ 6th Floor | |
| Washington DC ~~20005~~ 20036 | |

| Date of Entry | |
|---|---|
| 12/9/04 | Petition for Review and De Novo Determination, filed. s/Good, Esq. |
| 12/16/04 | Letter entering appearance, filed. s/Miller, AAG  ( no record to be filed) |
| 1/24/05 | Joint Motion for Order Specifying Future Course of Proceedings with Memorandum of Law, filed<br>Proposed Order, filed. |
| 1/31/05 | Consented-to-Motion for Admission Pro Hac Vice of Visiting Lawyers and Incorporated Memorandum of Law, filed. s/Beard, Esq.<br>Affidavit of Scott S. Smith, filed. s/Smith. Esq. |
| 2/2/05 | ORDER SPECIFYING FUTURE COURSE OF PROCEEDINGS, STUDSTRUP, J.<br>(discovery to be completed by 10/2/05 and motions to be filed by 12/2/05)<br>Copies mailed to attys of record. |
| 2/7/05 | ORDER ON MOTION PRO HAC VICE, Studstrup, J. (dated 2/3/05)<br>Scott D. Smith admitted to practice before this Court.<br>Copies mailed to attys. |
| 6/28/05 | Notification of Discovery Service, filed. s/Miller, AAG<br>State Tax Assessor's First Request for Production of Documents and State Tax Assessor's First Set of Interrogatories served on Sarah H. Beard, Esq. on 6/27/05 |
| 7/19/05 | Joint Motion for Enlargement of Procedural Deadlines and Proposed Order, filed. |
| 7/21/05 | ORDER ON JOINT MOTION FOR ENLARGEMENT, Studstrup, J.<br>(Discovery shall be completed no later than 11/27/05)<br>Copies mailed to attys of record. |
| 8/9/05 | Consented-to Motion for Admission Pro Hac Vice of Visiting Lawyers and Incorporated Memorandum of Law, filed. s/Beard, Esq.<br>Affidavit of Philip M. Plant, filed. s/Plant, Esq.<br>Proposed Order, filed. |

| Date of Entry | Docket No. _____ |
|---|---|
| 8/10/05 | On 8/9/05: Petitioners' Motion to Admit Visiting Lawyers Pro Hac Vice is GRANTED. Marden, J. Copies issued parties. |
| 8/29/05 | Notification of Discovery Service, filed. s/Beard, Esq. Petitioners' Responses to State Tax Assessor's First Set of Interrogatories and Petitioners' Response to State Tax Assessor's First Request for Production of Documents served on Michael Miller, AAG. on 8/26/05. |
| ------- | Entry of Appearance by Daniel Snow for Petitioners, filed. |
| 09-08-05 | **Proposed agreed to and stipulated Consent Confidentiality Order received and filed 09-08-05 by Sarah Beard, ESQ.** |
| 9/10/05 | CONSENT CONFIDENTIALITY ORDER, Marden, J. Copies mailed to attys of record. |
| 10/27/05 | State Tax Assessor's Motion for 3-Month Enlargement of Time, with Incorporated Memorandum of Law, filed. s/Knowlton, AAG Letter entering appearance, filed. s/Knowlton, AAG |
| 10/31/05 | Letter informing the court that plaintiff does not oppose the motion for enlargement of time, filed. s/Beard, Esq. |
| 11-02-05 | Received and filed Notification of Discovery Service by Thomas Knowlton AAG for Respondent. Papers served Notice of DIsposition of Gannett Satelite Information Network, Inc, Notice of Depostion of GAnnett Co. Inc., Notice of Depostion of Lawrence Bennigson. |
| 11/7/05 | ORDER ON ASSESSOR"S MOTION FOR 3 MONTH ENLARGEMENT OF PROCEDURAL DEADLINES, MARDEN, J. Discovery shall be completed not later than February 24, 2006. All motions to be filed no later than April 24, 2006. Copies mailed to attys of record. |
| 11-29-05 | Received and filed by AAG Thomas Knowlton, Attorney for State Tax Assessor, a Notification of Discovery Service of State TAx Assessor's Second Set of Interrogatories and Second Request for Production of Documents served on Sarah Beard, ESq. for Petitioner 11-28-05. |
| 12-14-05 | Received and filed by Thomas Knowlton, AAG for State Tax Assessor, a Notification of Discovery Service served on 12-09-05. Papers served on Sarah Beard, Esq. the Notice of Depostion of Gannett Satellite Information Network, Inc. and Notice of Gannett Co. Inc. |
| 12-29-05 | Received and filed by Petitioners Attorney, Sarah Beard, Esq. a Notification of Discovery Service. Papers served on Thomas Knowlton, AAG on 12-28-05 Papers served were Petitioners' Responses to State Tax Assessor's Second Set of Interrogatories, and Petitioners' Response To State Tax Assessor's Second Request For Production of Documents. |
| 01-25-06 | Received and filed by AAG Thomas Knowlton on behalf of the Tax Assessor a Notification of Discovery Service the State Tax Assessor's Third Request for Production of Documents served on Sarah Beard, Esq. on 01-24-06. |
| 02-06-06 | Received and filed by AAG Thomas Knowlton on behalf of State Tax Assessor a Notice of Deposition of Christopher Baldwin and a Notification of Discovery Service. Notice of Deposition of Christopher Baldwin served on Sarah H. BEard, Esq. on 02-03-06. |
| 2/8/06 | Letter from attorney Snow requesting a discovery dispute telephone conference, filed. |
| 2/9/06 | Hearing/Conference Record, Marden, J. Daniel Snow, Esq. and Thomas Knowlton, AAG. participating in conference call. |

| Date of Entry | |
|---|---|
| 2/13/06 | ORDER ON LETTER REQUESTING CONTINUANCE, Marden, J.<br>List is prepared through December 2006 per Order of Court. DENIED, at thi. time.<br>Copies mailed to attys of record. |
| 2/17/06 | Letter from attorney Knowlton requesting a discovery dispute conference. |
| 3/1/06 | Notice of setting of discovery dispute on 3/9/06 at 8:30a.m. sent to attys of record. |
| 3/13/06 | ORDER ON DISCOVERY DISPUTE, MARDEN, J.<br>Copies mailed to attys of record. |
| 04-21-06 | Received and filed by AAG Thomas Knowlton on 04-18-06 on behalf of State Tax Assessor, the parties' Joint Motion for Leave of Court to Exceed Page Limit for Summary Judgment Memoranda, with Incorporated Memorandum of Law along with a proposed order. |
| 4/26/06 | ORDER ON JOINT MOTION TO EXCEED PAGE LIMITS, MARDEN, J.<br>Copies mailed to attys of record. |
| 5/19/06 | Petitioners' Motion for Summary Judgment and Incorporated Memorandum of Law, filed. s/Snow, Esq.<br>Petitioners' Statement of Material Facts in Support of Their Motion for Summary Judgment, filed. s/Snow, Esq.<br>Affidavit of Larry F. Miller, filed. s/Miller<br>Affidavit of Cecil L. Walker, filed. s/Walker<br>Affidavit of Michael C. Burrus, filed.<br>Affidavit of Patricia J. Selby, filed.<br>Affidvit of Christopher W. Baldwin, filed.<br>Affidavit of Lawrence A. Bennigson, filed. s/Bennigson<br>Proposed Order, filed.<br>Request for Hearing, filed. s/Snow, Esq.<br>Confidential documents, filed.<br><br>Deposition Transcripts & Exhibits 1-9 in vault<br>Exhibits 1-26 in vault   Exhibits 27-59 in vault |
| 6/12/06 | State Tax Assessor's Memorandum in Opposition to Petitioners' Motion for Summary Judgment, filed. s/Knowlton, AAG<br>Rule 56(h)(1)Statment of the State Tax Assessor, filed. s/Knowlton, AAG<br>Affidavit of Howard Whitehead in Opposition to Petitioners' Summary Judgment Motion, filed. s/Whitehead<br>State Tax Assessor's Motion to Exclude Expert Testimony of Lawrence A. Bennigson, with Incorporated Memorandum of Law, filed. s/Knowlton, AAG<br>Deposition of Lawrence Bennigson, filed. |
| ———— | Petitioners' Memorandum in Opposition to Respondent's Motion for Summary Judgment, filed. s/Beard, Esq.<br>Petitioners' Opposing Statement of Material Facts in Opposition to Respondent's Motion for Summary Judgment, filed. s/Beard, Esq.<br>Depositions of Christopher W. Baldwin, Maria Kozan,Cecil L. Walker, Patricia Selby and Lawrence Benningson, filed. |
| 6/16/06 | Petitioners' Reply Memorandum in Support of Their Motion for Summary Judgment, filed. s/Beard, Esq.<br>Petitioners' Reply Statment of Material Facts to Respondent's Statement of Additional Material Facts, filed. s/Beard, Esq.<br>Petitioners' Memorandum in Opposstion to Responsentśs Expert Testimony of Lawrence A. Bennigson, filed. s/Beard, Esq.<br>Deposition of Lawrence Bennigson, filed. |

| Date of Entry | Docket No. |
|---|---|
| 6/19/06 | Rule 56(h)(3) Reply Statment of the State Tax Assessor, filed. s/ Knowlton, AAG<br>State Tax Assessor's Reply Memorandum in Support of His Motion for Summary Judgment, filed. s/knowlton, AAG |
| 6/28/06 | Assessor's Motion for Leave to File 5-Page Surreply Memorandum, with Incorporated Memorandum of Law, filed. s/Knowlton, AAG<br>Proposed Order, filed. |
| 6/30/06 | ORDER, Marden, J.<br>Motion for Leave to File 5 Page Surreply granted.<br>Copies mailed to attys of record. |
| 7/5/06 | State Tax Assessor's Surreply Bridf Regarding his Rule 56(h)(2) Statement, filed. s/Knowlton, AAG |
| 11/21/06 | Hearing had, Hon. Donald Marden (no courtroom clerk)<br>Case under advisement. |
| 3/22/07 | Letter regarding change in firm affiliation, filed s/Smith, Esq. |
| 5/18/07 | Supplement supporting Assessor's motion for summary judgment, filed. s/Knowlton, AAG |
| 5/24/07 | Letter responding to Mr. Knowlton's letter of 05/17/07. s/Beard, Esq. |
| 7/3/07 | Letter informing of address change of S. Smith, Esq., filed 7/2/07. s/Smith, Esq. |
| 9/27/07 | DECISION AND ORDER, Marden, J.<br>Motion for summary judgment of Gannett Satellite Information Network, Inc., et al. is GRANTED; judgment for Gannett Satellite Information Network, Inc. on its petition for judicial review; decisic on reconsideration of the State Tax Assessor in the matter of corporat income tax for the tax year 2000 is REVERSED.<br>Copies mailed to attys. of record.<br>Copies mailed to Deborah Firestone, Donald Goss and Garbrecht Law Library. |